## H. P. PACE v. W. M. PACE et al.

[65 South. 273.]

1. ESTOPPEL. *Estoppel in pais. Prejudice. Gifts. Delivery. Notes. Bank books. Gifts causa mortis. Necessity of delivery.*

Where a testatrix before her death made a valid gift *causa mortis* of certain notes, the donee is not estopped to claim them because of delivering them to the executor, making no claim to them and consenting to the probate of the will, no one being thereby misled to his prejudice or caused to give up anything.

2. GIFTS. *Delivery. Notes.*

The delivery of notes payable by the donor to the donee perfects a gift thereof to the donee.

3. GIFTS. *Delivery. Bank books.*

A delivery of the donor's bank book is not sufficient to perfect a gift *causa mortis* of his funds in the bank, since to perfect such a gift, there must be a legal delivery of the thing given.

APPEAL from the chancery court of Monroe county.

HON. J. Q. ROBINS, Chancellor.

Suit by H. P. Pace against W. M. Pace and others. From a decree dismissing the bill, complainant appeals. The facts are fully stated in the opinion of the court.

*Leftwitch & Tubb*, for appellant.

We will briefly treat the instrument as a deed of gift, *inter vivos*, and, in so doing, we must not be held to

waive the argument heretofore made that the instrument is a valid conveyance, for a valuable consideration and definite end. In his evidence, appellant himself speaks of it as a deed of gift in one place, but however he may have defined it, this court should treat it as it is; but as a deed of gift, it is certainly a valid conveyance for that part of the estate of Mrs. Peavy which was delivered to appellant in her lifetime, actually or symbolically. We recognize that to make a deed of gift effectual, either as a gift *inter vivos* or *causa mortis,* there must be a delivery. *Thompson* v. *Thompson,* 2 Howard, 737; *Wheatley v. Abbett,* 32 Miss. 343; *Conner* v. *Hull,* 36 Miss. 424; *Young* v. *Power,* 41 Miss. 197; 14 Am. & Eng. Ency. of Law (2 Ed.), 1014-15. Was there a delivery? The learned chancellor evidently committed two errors; the first was in construing the paper as a deed of gift, and not a conveyance for a valuable consideration; and the second, in holding that there was no delivery of any of the property. He must have fallen into both of these errors to have dismissed plaintiff's petition outright. As to the two Billups notes, they were twice delivered; she first gave them to him on the morning of the 15th of November after she had sent for him the night before when she was very ill, all of which has its significance, along with the pass book. The testimony of appellant can be ignored, and this delivery is still indisputably shown and is by no one contradicted. Neither of the notes were endorsed, but all of the authorities hold that a deed of gift of promissory notes payable to order or bearer may be effected without endorsement by delivery. 14 Am. & Eng. Ency. of Law, 1022-32-29; 20 Cyc. 1202.

As to the pass book, the point, a very technical one made by counsel, is that a pass book delivered by the donor to the donee does not pass the money in bank unless it is a saving bank pass book, and they cite 20 Cyc. 1205. This rule here invoked is entirely too

technical, and the courts have held that a symbolic delivery of property can be made to uphold a deed of gift. It must be remembered that the instrument of writing of January 16, 1900, conveys the cash money, and this court will, of course, take notice that the common acceptation of the layman is that the money he has in bank is cash money; of course, the lawyers know that the legal relation between a bank and its depositors is that of debtor and creditor, but the question here is one of intention, and the layman considers money in bank as cash. The act of Mrs. Peavy delivering the bank pass book should not be considered independently of the conveyance she had theretofore made, but all the evidence should be considered together, and when so considered, it is entirely too technical to invoke this rule to defeat a palpably plain intention on the part of Mrs. Peavy to give H. P. Pace this money in bank. Many authorities of our own state recognize a symbolic delivery as effectual, and the intention of the testator along with his declaration at the time are all potential in construing the act. *Cardine* v. *Collins,* 7 S. & M. 428; *Young* v. *Young,* 25 Miss. 28-38; *Coppidge* v. *Barrett,* 34 Miss. 621; *Wheatley* v. *Abbott,* 23 Miss. 343.

We make one more observation which is to answer the contention that H. P. Pace by consenting to the probate of the will by executor Paine thereby is estopped to claim under the bill of sale, whether it be construed as such or as a deed of gift. There are none of the elements of estoppel in his conduct in this particular, taking every word that Mr. Paine says to be true. Estoppel operates, if it operates at all, here, against W. M. Pace, but estoppel cannot extend to that about which at the time there was no controversy and the truth of which was taken for granted. The validity of the will was not questioned or doubted by either the appellant or his brother and both asked for its probate. The question here is, what passes under the will? *Davis* v.

*Bowmar,* 55 Miss. 671; *Houston.* v. *Witherspoon,* 68 Miss. 190.

Conduct, to work estoppel, must have been made with full knowledge of the facts by the party to be estopped, unless he asserts that to be true which does not know to be true and his adversary relies upon such statement to his injury. Silence, in the absence of knowledge of one's rights, does not work estoppel. *Thomas* v. *Romano,* 82 Miss. 256; *Yazoo Lumber Co.* v. *Clarke,* 95 Miss. 244; *Scottish American Mort. Co.* v. *Bunkley,* 88 Miss. 641.

*Paine & Paine,* for appellees.

As to the second division of counsel's argument in which they say if they are in error as to the character of Exhibit ''B'' then they insist it was a gift *inter vivos* or *causa mortis.* They concede that to constitute either there must have been a legal delivery of all property so given. The fact as to the delivery was one to be established by testimony and the chancellor, after hearing all the evidence, decreed there was no delivery and his decree, being based on conflicting evidence, is conclusive and should not be reviewed by this court.

But counsel in their brief accused attorney for appellees of technical pleading and quibbling; because it is urged in the demurrer and answer that there could be no delivery or change of money in the Bank of Aberdeen belonging to Mrs. Peavey merely by the delivery to appellant of her pass book, admitting, for the sake of argument, that such delivery was shown. This position is not technical pleading or quibbling. It is but the assertion of legal rights that inevitably follow the relation of banker and depositor or debtor and creditor. The only legal way a creditor can draw money from a commercial bank of discount, as was the Bank of Aberdeen, is by check or written order. Any other mode of doing so is unknown and unpracticed by bankers and the com-

mercial world. There could not be a symbolic delivery
of the money in this bank except by a check or written
order. Certain it is, that the possession of a person's
bank pass book is no authority for the bank to pay out
money belonging to the owner of the bank pass book, to
a person merely having the possession of the book. The
demurrer which reached this question is a new question
in this state but it is good law supported by many ex-
cellent authorities and sustained by the chancellor's
decree. The point raised by the demurrer and sustained
by the chancellor is this: the mere possession of a bank
pass book in a commercial bank of discount and deposit
is no proof or evidence of the ownership of the money in
bank; and therefore, the mere possession of a bank pass
book in such a bank, is no evidence of a delivery nor
could it be considered a delivery of the money in said
bank. But if the bank had been a savings bank, then
the rule would have been otherwise, as the bank pass
book of a savings bank is accepted as the record of the
depositors' account and its production authorizes con-
trol of the deposit. See 20 Cyc., pages 1239 and 1240
and the notes under page 1239, note 2, which shows that
this rule is recognized as the law in the states of Ala-
bama, Connecticut, Maine, Maryland, Massachusetts,
New York, New Jersey, Ohio, Pennsylvania, Rhode
Island, Vermont, England and Canada. The Bank of
Aberdeen is a bank of discount and deposit as alleged
by the sworn answer and admitted by counsel for ap-
pellant.

In conclusion, I submit, that the chancellor decided
for appellees on conflicting facts or for the reason that
appellant had not made out his case; and that the chan-
cellor committed no error of law.

COOK, J., delivered the opinion of the court.

Mrs. M. E. Peavey made a will December 5, 1899,
by which she devised all of her property, except some

furniture and an organ, to W. M. and H. P. Pace, brothers, "jointly in fee simple." Her attorney, G. C. Paine, was named as executor of the will. On January 16, 1900, Mrs. Peavey executed and delivered to H. P. Pace the following written instrument:

"The State of Mississippi, Monroe County.

"Know all by these presents, for and in consideration of one dollar paid to me, love, affection, and certain services rendered, have this day sold to H. P. Pace the following described property, to wit: All of my household and kitchen furniture, except two feather beds and steads, all live stock, such as horses, mules, cattle, hogs, etc., one surrey and one buggy, also all trust deeds, notes, accounts, and cash money, or so much thereof as I may possess at the time of my death. To have and to hold against the claims or demands of any person or persons whatsoever, and to his heirs and assigns forever. Witness my signature, January 16, 1900.

"M. E. PEAVEY.

"I hereby certify M. E. Peavey signed the above document before me this the 18th day of January, 1900.

"R. W. EIKNER, Justice of the Peace."

On December 30, 1910, Mrs. Peavey departed this life. After the death of the testator, her will was probated, and Mr. Paine qualified as executor.

During the last illness of Mrs. Peavey she sent for H. P. Pace, appellant, and delivered to him two notes, payable to her and signed by Sam Billups, and also her bank book, showing that she had on deposit in the Bank of Aberdeen five hundred and two dollars and forty cents, saying to him in the presence of others that she wanted him (H. P. Pace) to have all she had when she died. It is claimed by appellees that there is some conflict in the evidence as to whether or not Mrs. Peavey delivered one of the Sam Billups notes to Mr. Pace; but we think it is clear, from a reading of the abstract of the testimony of Mrs. Johnston about the Sam Billups

note, that she confused this note with another note, and that her testimony does not conflict with the testimony of the other witnesses. There seems to be no shadow of doubt that Mrs. Peavey intended to give to H. P. Pace all she then possessed. This is conclusively proven, and there is no evidence to the contrary.

The only question left for decision is: Did she succeed in carrying out her purpose? It makes no difference whether she made or attempted to make a gift *inter vivos,* or *causa mortis,* as the result will be the same. We think, however, she was making, or attempting to make, a gift *causa mortis.* Going back to the bill of sale executed January 16, 1900, we are of opinion that this instrument is only significant in establishing that Mrs. Peavey then intended to make H. P. Pace her heir, and the notes, trust deeds, accounts, and money mentioned referred to the money and evidences of debt she then possessed. The evidence, however, shows that Mrs. Peavey in her last illness still desired to make H. P. Pace heir of all she had at her death.

After the death of Mrs. Peavey, Mrs. Bowen, who nursed her during her last illness, claimed that she was entitled to five hundred dollars out of her estate, and appellant agreed with the executor and his brother that she should be paid out of the money in the hands of the executor. It also appears that the will was probated with appellant's consent, that appellant agreed to take under the will, and that he delivered to the executor the notes in controversy. It is insisted that appellant is now estopped to claim the notes, because he delivered them to the executor and made no claim to the notes at the time he turned them over to Mr. Paine. We are unable to discover any of the elements of estoppel in this transaction. Nobody was misled to his prejudice, or caused to give up anything because of his failure to claim the notes, or by his agreeing to the probate of the will. There is no contention that the instrument offered

for probate was not the will of Mrs. Peavey, and appellant's objection to the probate would have no weight.

The delivery of the notes to appellant perfected the gift of same, and the chancellor erred in holding to the contrary. 20 Cyc. 1206; *Ashbrook* v. *Ryon's Adm'r*, 2 Bush (Ky.), 228, 92 Am. Dec. 481.

It is claimed that the delivery of the bank book, evidencing the credit which the donor had in the bank of deposit and discount, sufficed to transfer this claim to appellant. The gift of such a bank book is not a sufficient delivery to sustain a gift *causa mortis*. *Jones* v. *Weakley*, 99 Ala. 441, 12 So. 420, 19 L. R. A. 700, 42 Am. St. Rep. 84; 20 Cyc., p. 1205. In the case of *Ashbrook* v. *Ryon's Adm'r*, 2 Bush (Ky.), 228, 92 Am. Dec. 481, the court differentiates the effect of the delivery of notes and the delivery of bank books. In that case the Kentucky court used language which seems to be pertinent to the criticism by appellees of the evidence in this case, which we quote:

"It is true that there is, as is usual, some difference in the statements of these various witnesses as to minor facts; but, instead of this impairing the value of their evidence on the main facts, it goes to preclude the idea that the evidence was manufactured."

The manifest intention of Mrs. Peavey was to give H. P. Pace all she possessed at the time of her death; but mere intention to give is insufficient to perfect a gift *causa mortis*. There must be a legal delivery of the thing given, and the delivery of the bank book, with a statement that she wanted him to have all she had, was not a delivery of her claim against the bank.

We can see no inconsistency in agreeing to the probate of the will of Mrs. Pace and the claim of appellant to her property. He is entitled to what she gave him by reason of the perfected gift, and he is entitled to onehalf of the property disposed of by the will, because the will so provides. The effort of Mrs. Peavey to dispose

of all her property by gift failed in part, and therefore
her will disposes. of what property she possessed at the
time of her death.    Her bank deposit and the note in
the hands of the executor, together with all other prop-
erty not disposed. of before her death, belong to her
estate, and will be distributed according to the direc-
tions of the will.    The two Billups notes are the prop-
erty of appellant, and will be delivered to him by the
executor.

*Reversed.*