GIDDEN et al. v. GIDDEN.

(Division B.   May 4, 1936.)

[167 So. 785.   No. 32186.]

**Maynard, FitzGerald & Venable,** of Clarksdale, for appellant.

**Brewer & Montgomery,** of Clarksdale, for appellee. Briefs of counsel not found.

**Anderson, J.,** delivered the opinion of the court.

There is involved in this litigation the construction of the last will and testament of W. B. Gidden, who usually signed his name as Bill Gidden, and certain deeds of gifts executed by him between the time of the making of the will and his death. The will was executed on the 26th day of January, 1934; he died on March 3d following. At the time of the execution of the will and the deeds, the testator was in the Baptist Hospital in Memphis being treated for a serious illness of which he died. He was without children or descendants of children. His mother, Mrs. Emma Gidden, survived him, as did his wife, Mrs. Alice Gidden, and two brothers, Hill and L. A. Gidden. The beneficiaries under his will were his wife, who was named executrix without bond; his mother; two brothers; Miss Spain, his secretary; a nephew, Pete Kittle; E. H. Graves, an employee; and Rodney Brooks, a friend.

The testator owned, at the time of the making of the will, the following property: A plantation in Tunica county, consisting of approximately seven hundred acres, known as the Gardner place, and the usual farming equipment thereon, against which there was a mortgage indebtedness in favor of the Union Central Life Insurance Company; his home place in Tunica, on which there was situated his residence, a garage business, a "Jack and Jill" restaurant, and a drug store; a "reserve account" in the bank, consisting of about one thousand six hundred dollars growing out of the garage business; a fifty-foot front lot in the town of Tunica; one

hundred and thirty-six bales of cotton in a compress in Memphis, for which he held negotiable warehouse receipts in the safe in his office in the town of Tunica; about seven thousand dollars in the hands of brokers in Chicago, growing out of futures contracts; stock in the Planters Bank in Tunica; stock in the Delta Grocery & Cotton Company of Clarksdale; stock in Moon Lake Fishing Club; and other property, including bills receivable. His wife was a devisee as well as residuary and specific legatee in the will. She qualified as executrix and took charge of the estate.

Ranged in this litigation on one side is the widow in her capacity as executrix and also as beneficiary under the will, and on the other side all the other devisees and legatees. The residuary estate was not sufficient to pay the testator's debts; however, the legacies are more than sufficient for that purpose without encroaching on the real estate. The bequests, except those to his brothers, were all sufficiently ear-marked to make them specific legacies under the law. The principal question in the case is whether or not they should be abated pro rata for the purpose of paying the general debts, or whether the specific legacy to the mother of the cotton in compress and the garage reserve account in the bank and the futures account with the brokers in Chicago should be preferred. In other words, whether the other specific legacies should first be abated pro rata before reaching the specific legacy to the mother referred to. The chancellor held that all the specific legacies should be abated pro rata.

In the determination of that question there are several others involved, which will be considered as they appear logically. It would be well to keep in mind that under the law, on the death of the owner personal property descends to his personal representative for the payment of debts and legacies, and real estate goes to his heirs and devisees and is not subject to debts until the

personal property is exhausted, unless the will expressly provides otherwise. Section 1643, Code 1930; Gordon v. James, 86 Miss. 719, 39 So. 18, 1 L. R. A. (N. S.), 461. Probably it would be better to set out the will in full rather than undertake to state its substance; leaving off the caption, signature of the testator, the signatures, and certificate of the subscribing witnesses, it reads as follows:

"I, W. B. Gidden (Bill Gidden), knowing the uncertainty of life and the certainty of death, and being of sound and disposing mind, memory and understanding, do hereby make, publish and declare this, my Last Will and Testament, hereby revoking and annulling any and all former wills and codicils thereto by me heretofore made.

"Item 1. I direct that all of my just debts, expenses of last illness and funeral expenses be paid by my Executrix.

"Item 2. I hereby bequeath unto my beloved wife, Alice Gidden, my home, together with all my real estate forming a part of my residence property, situate in the Northwest (NW 1/4) Quarter of the Town of Tunica, and also the Northeast (NE 1/4) Quarter of Block No. 2 in the Southwest (SW 1/4) Quarter of said Town of Tunica, upon which there is now situated my garage building and the 'Jack & Jill' restaurant, excepting, however, from this bequest, the drug store building which has recently been constructed on the Northwest corner of said Northeast Quarter of Block No. 2 and which is now occupied as a drug store; I also devise and bequeath unto my said wife the entire garage business now operated and conducted by me, together with any and all accounts receivable, bank accounts incident thereto (excepting, however the Reserve Account) and any and all assets thereof, which said bequests in this Item named are made in fee simple absolute.

"Item 3. I hereby devise and bequeath unto my beloved mother, Mrs. Emma D. Gidden, that certain lot described as fifty feet in the middle of the Northeast Quarter of Block No. 4 in the Southwest 1/4 of the said Town of Tunica, together with any and all improvements thereon located, for the term of her natural life and at her death to descend to my brother Hill Gidden in fee simple.

"Item 4. I hereby devise and bequeath unto my brother, Hill Gidden, the drug store building located at the Northwest corner of the Northeast 1/4 of Block No. 2 in the Southwest 1/4 of the Town of Tunica, together with such part of said Northeast 1/4 as is occupied by said building; I also devise and bequeath unto the said Hill Gidden the sum of Four Thousand ($4,000.00) Dollars and direct that the same be paid to him as hereinafter directed.

"Item 5. I hereby devise and bequeath unto my good friend, Rodney Brooks, my clubhouse situated on Moon Lake and my motor boat located at such house, together with any and all rights and privileges which I may have in and to a certain lot of land on which such clubhouse is located.

"Item 6. As an evidence of the deep esteem and of my appreciation for the many years of faithful and conscientious services rendered to me, I do hereby devise and bequeath unto Miss Annie Spain all of the negro rental property which I now own in the Town of Tunica, being in the Northwest 1/4 of Block 3 and in the Northwest 1/4 of Block 4, both in the Southwest 1/4 of said Town of Tunica; and in the Tunica Colored Subdivision; and immediately South of and adjoining the North line of Section 32, in Township 4 of Range 11 West (which I purchased from Mrs. Georgia I. Abbay), in fee simple.

"Item 7. I hereby appoint C. A. Jaquess Trustee for the purpose of selling all of my stock and bonds not herein specifically mentioned including all future con-

tracts, cotton which I may have stored in warehouses
and to collect the proceeds of such sales, to execute for
my Estate full and complete receipts and acquittances
for all such funds derived from the sale of such prop-
erty and choses in action, money on deposit with brok-
ers and to apply all of such moneys: first, to the pay-
ment of any and all indebtedness which I may owe on
my farm lands situated in Sections 13 and 14 in Town-
ship 5 of Range 12 West in Tunica County, Miss., and
commonly known as the 'Gardner Place;' second: to the
payment of the specific bequest to my brother Hill Gid-
den, as provided by Item 4 hereof; third: to the pay-
ment of the specific bequest to my brother L. A. Gidden,
as provided by Item 9 hereof; and the balance, if any
remain, he shall pay to E. P. Peacock, of Clarksdale,
Mississippi, to be handled by him as is provided by Item
8 hereof.

"Item 8. I do hereby devise and bequeath unto E. P.
Peacock, of Clarksdale, Mississippi, as Trustee for my
mother, Mrs. Emma D. Gidden, all of my said lands
known as the Gardner Place in Sections 13 and 14 in
Township 5 of Range 12 West, in Tunica County, Mis-
sissippi, together with any and all personal property
thereon located and direct that said Trustee, in his dis-
cretion, operate said lands as a plantation or sell and
dispose of such personal property and rent said lands
during the life of my said mother and, at her death, the
said lands shall descend from such Trustee to my broth-
er (Alteration made before signing—W. B. G.) L. A.
Gidden in fee simple, if living, and if not, then to my
right heirs. Said Trustee is hereby authorized and em-
powered, in his discretion, to do any and everything
which may be necessary in and about the operation of
said lands as a plantation, as is usually done, including
the borrowing of money with which to plant, cultivate
and gather the crops thereon and to secure the same by
a deed of trust or pledge of such crops and personal

property and the insuring of all buildings and improvements thereon. The said Trustee shall first pay all taxes and other necessary expenses incident to the owning of said plantation, including the necessary repairs and improvements and shall then dispose of the net proceeds and other moneys arising therefrom as follows:

"I direct that my Executrix do immediately pay to the said E. P. Peacock, Trustee, all of my Reserve Account incident to said garage business, and that the said C. A. Jaquess, Trustee named in Item 7 hereof, do pay such balance therein mentioned to said E. P. Peacock, Trustee, which said funds, together with the net proceeds from said plantation, and other moneys hereinbefore mentioned, I authorize and direct that said E. P. Peacock, Trustee, in his discretion, invest the same and to pay to my mother, Mrs. Emma D. Gidden, such portions of the principal and interest, as may be necessary for her suitable and proper support and maintenance, including any and all necessary expenses which may be incident to her livelihood, support, pleasure and well-being; it being my desire that my mother be properly cared for during the remainder of her life and should it become necessary that the said E. P. Peacock expend all of said moneys in so caring for my mother, he is hereby authorized and empowered to do so and I direct and authorize him to retain from said moneys such reasonable compensation for performing the duties herein imposed upon him as may be just and proper. I further direct that upon the death of my said mother, that any funds remaining in the hands of such Trustee shall be by him paid to such person or persons as my said mother may direct.

"Item 9. I hereby devise and bequeath unto my brother, L. A. Gidden, the sum of One Thousand ($1,000.00) Dollars, to be paid to him by C. A. Jaquess, Trustee, as is mentioned in Item 7 hereof.

"Item 10. I hereby devise and bequeath unto E. H. Graves, in appreciation of his faithful services to me, all of the capital stock in the Planters Bank of Tunica, Mississippi, of which I may die seized and possessed.

"Item 11. I devise and bequeath unto my nephew, Pete Kittle, all of the capital stock which I own in the Delta Grocery & Cotton Company of Clarksdale, Mississippi.

"Item 12. I hereby devise and bequeath unto my beloved wife, Alice Gidden, all of my personal effects, including jewelry, together with any and all property, real, personal and mixed and choses in action, wheresoever situate, of which I may die seized and possessed and not specifically devised herein.

"Item 13. I hereby direct that all specific bequests in this Will mentioned be decreased proportionately for the purpose of Inheritance Taxes which may be a charge upon my Estate, that is: that such bequest be decreased in such proportion as such taxes may bear to my taxable estate.

"Item 14. I hereby appoint my wife, Alice Gidden, Executrix of this my Last Will and Testament, and direct that she be required to give no bond as such and that she be excused from the filing of any account to any Court as such.

"And now, having fully disposed of all my worldly possessions, I commend my soul to God who gave it and consign my body to the earth from whence it came.

"Witness my signature, this 26th day of January, 1934."

On the 21st of February, within less than a month after the execution of the will, the testator made and delivered to his mother a deed of gift to the Gardner plantation, including all farm equipment thereon devised to her in the will, conveying to her a life estate therein with remainder in fee to his brother Hill Gidden if living, and if dead, to his other brother, L. A. Gidden, and

"also 136 B/C now in compress," all subject to taxes for the year 1934 and the mortgage indebtedness of the Union Central Life Insurance Company. On the same day he executed and delivered a deed of gift to his brother L. A. Gidden of his garage business in the town of Tunica, and the lot on which it was situated, together with all automobiles, accessories, stock in trade, furniture, fixtures, and assets, subject to the indebtedness of the business. It will be observed that under item 2 of the will he had given this property to his wife without any provision that it should be subject to the debts of the business.

After the death of the testator, and on the 7th of March, 1934, the widow executed a contract waiving her right to renounce the will of her husband and take by inheritance in consideration of the execution of a deed by L. A. Gidden conveying the garage business, and lot on which it was situated, back to the estate to be disposed of as provided in the will. The last paragraph in this contract is in this language:

"Now therefore I, the said Alice Gidden the widow of W. B. Gidden, deceased, in consideration of the agreements and matters hereinbefore mentioned do hereby waive and relinquish any and all rights which I may have under the laws of the State of Mississippi to renounce said will of January 26th, 1934, and to take in lieu of the provisions of said will any other interest in said property than that specifically provided by the terms of said will."

On the same day, carrying out that agreement, L. A. Gidden executed a deed conveying back to "The Estate of W. B. Gidden, Deceased," the garage business and the lot on which it was situated, subject to the debts of the business, "for the purpose of permitting the same to descend in accordance with the terms and provisions of the last will and testament of the said W. B. Gidden, Deceased."

On February 20, 1934, the testator wrote and signed with his own hand the following note to his brother Hill Gidden:

"Hill:—

"Mr. Moore has about a car of cotton seed stored that belongs to me. See him and get possession of this seed. If anything should happen to me, you can sell this seed to your best advantage."

The evidence and the surrounding circumstances all show that the deeds, as well as the note in reference to the cotton seed, were made by the testator during the illness of which he died and in contemplation of death; therefore under the law they were gifts causa mortis.

We will consider first the question of whether the one hundred and thirty-six bales of cotton in compress in Memphis, Tenn., pass under the will or the deed; if under the deed, all legacies must be exhausted if necessary to pay debts before resort can be had to the fund arising from the sale of the cotton. The determination of this question turns on whether the law of Tennessee governs or the law of Mississippi; if the former, the mother received a good title to the property; if the latter, she did not. Under the decisions of the Supreme Court of Tennessee the delivery of a deed of gift causa mortis of personal property to the donee conveys a good title; the delivery of the deed is symbolic of the delivery of the property and is sufficient under the law. That is not the rule in this state. However, before going into that question further we will consider which law applies.

Notwithstanding the fact that the cotton was located in a compress in another state, the location was not permanent. It is a matter of common knowledge in the cotton trade, of which the courts will take judicial notice, that cotton in a compress is on its way to market and ultimately to the textile mills, and that the market and the mills are often in other states or foreign countries. The cotton is moving; it has no fixed situs. The testa-

tor's domicile and fixed place of residence was in this state; he held negotiable warehouse receipts for the cotton, which were in the safe in his office in Tunica. Under the Uniform Negotiable Warehouse Receipts Act (Code 1930, sec. 3481 et seq.) the orderly way of transferring personal property so situated is delivery of the receipts. The ancient rule was that personal property always had its situs at the domicile of the owner. In Hairston v. Hairston, 27 Miss. 704, 61 Am. Dec. 530, our court held that the situs of personal property followed the owner and was subject to the law which governed his person "both with respect to the disposition of it, and its transmission either by succession or the act of the party." There is a discussion of this question and the citation of authorities in the notes in 22 R. C. L. at page 42, sec. 8. The discussion is concluded with the statement that when the rights of citizens of the state where the property is situated are not involved, the rule is that the law of the owner's domicile will govern its transfer. That principle applies here with especial force. We conclude, therefore, that the law of Mississippi governs, and not that of Tennessee.

Under the law of this state the attempted deed of gift is void because there was no delivery of the cotton. One of the essentials of a valid gift causa mortis, as well as inter vivos, is that the property must be delivered; the donor must surrender all dominion over it. Johnson v. Grice, 140 Miss. 562, 106 So. 271; Pace v. Pace, 107 Miss. 292, 65 So. 273; Meyer v. Meyer, 106 Miss. 638, 64 So. 420; Fairley v. Fairley, 34 Miss. 18; McWillie v. Van Vacter, 35 Miss. 428, 72 Am. Dec. 127. In the last case the court held that the delivery to the donee of a deed of gift did not complete the gift, but was a mere contract to give. Such a contract is unenforceable because there is no consideration. In the Pace Case the court held that the delivery of the donor's bank book was not sufficient to sustain a gift causa mortis of his

credit with the bank. The evidence showed that the testator did not understand that he had delivered the cotton to his mother, for after the execution of the deed to her he treated the cotton as still in his possession by ordering the warehouse receipts to be placed with the bank at Tunica as collateral for an indebtedness he owed the bank. This was later done, but not until the day of, and after, his death. In Thornton on Gifts and Advancements, p. 173, Mississippi is set out in the notes as standing alone in holding that the delivery to the donee of a deed of gift is not sufficient alone to convey the title. Whether that be true or not, and whether the rule in this state be good or bad, according to reason, we do not think it ought to be changed now. It is not a mischievous, harmful rule; the donee loses nothing, the donor simply "plays Indian" and takes back what he attempted to give before the donee gets his hands on it.

It follows that the cotton passes under items 7 and 8 of the will for the benefit of the mother, and it goes along with the reserve account in the bank and the futures account to the trustees, C. A. Jaquess and E. P. Peacock. It is, of course, a specific legacy, not a general one. The chancellor held that for the payment of the general debts it should be abated pro rata with the other specific legacies. That holding is assigned as error by appellants. Item 7 of the will directs J. A. Jaquess as trustee to sell the cotton stored in warehouse and collect the proceeds, the money in futures account along with the proceeds of other property not specifically disposed of, and apply it, first, to the payment of the mortgage indebtedness on the Gardner plantation; second, to the payment of the legacy of his brother Hill Gidden of four thousand dollars; third, to the payment of the legacy to his brother L. A. Gidden of one thousand dollars; and that the balance be turned over to Peacock. The latter was authorized, with very large powers, to take charge of the Gardner plantation and operate it for the

maintenance and support of the testator's mother. He was authorized to collect the reserve account of about one thousand six hundred dollars in the bank. At the death of the mother the will provided that any of such funds remaining on hand should be paid to the person or persons "as my said mother may direct."

The will does not provide in so many words that this specific bequest to the mother should be preferred over the other specific bequests in the payment of debts, but taking the will as a whole it appears clear that that is what the testator meant. He created a trust for the benefit of his mother during her lifetime, and in unmistakable terms provided that the proceeds of this cotton, the garage reserve account, and the futures account should be applied first to the discharge of the mortgage on the land, then to the payment of the legacies to his two brothers, and any balance remaining at the death of his mother should be disposed of as she should direct. In other words, he directed what debt these funds should go to pay; he thereby took this bequest out of the class of the other specific legacies and gave it a preference standing. The chancellor held that after the exhaustion of the residuary estate for the payment of debts all the legacies should be abated proportionately for that purpose. If the testator had so intended item 13 of the will was useless; it was therein provided that all specific bequests should be decreased proportionately for the purpose of paying inheritance taxes.

The bequests to the two brothers—four thousand dollars to Hill Gidden and one thousand dollars to L. A. Gidden—are in a different class from any of the others; they are, as known in the law of wills, demonstrative legacies. A legacy of that character is one that is payable out of the estate generally but is charged as against other legatees on certain specific property. It is a money gift charged on a specific fund and directed to be paid out of that fund, but becomes a general legacy if the

fund is insufficient. 2 Page on Wills, sec. 1230. It follows that the proceeds of the cotton in compress and the futures and reserve accounts go first to the payment of the mortgage indebtedness on the plantation, and if there be anything left, then to the payment of the four thousand dollars money legacy to Hill Gidden, and if there be anything left, to the payment of the money legacy of one thousand dollars to L. A. Gidden, and any balance remaining turned over to the trustee Peacock for the purposes named in item 8. In other words, the mortgage indebtedness is preferred, then the legacy to Hill Gidden, then the legacy to L. A. Gidden. If the whole or any part of the legacies to the two brothers then remains unpaid, they become general legacies and must stand aside for the payment of debts and all specific legacies before they are reached.

The brother Hill Gidden claims title to the cotton seed stored with the gin company by virtue of the note written him by the testator above set out. He claims that it was an executed gift, and if mistaken in that the paper constituted a holographic will. We do not think there is any merit in either contention. The note is too indefinite to constitute either a deed or a will; there is no attempt to pass the title to the cotton seed, according to the usual understanding. The note stated that if anything should happen to the writer he wanted his brother to sell the seed "to your best advantage." The language is not sufficient to show that the brother was to own the proceeds of the cotton seed when sold.

Appellants contend that the chancellor erred in granting the widow a year's allowance of three thousand dollars, upon the principal ground that she waived that right in her contract binding herself not to renounce the will. We do not think there is any merit in that contention. In the first place, we doubt if there was any consideration for such an agreement; in the second place, the language relied on in the contract was too indefi-

nite and uncertain in its meaning. Under section 1664, Code 1930, a year's allowance to the widow is a privileged claim; it is not dependent upon the solvency or insolvency of the estate; it is exempt from debts. McNulty v. Lewis, 8 Smedes & M. 520; Turner v. Turner, 30 Miss. 428; Morgan v. Morgan, 36 Miss. 348.

The widow takes the garage property and business under the will. Appellants contend that she takes it burdened with the debts of the business. 'The will does not so provide. The conveyance of the property by L. A. Gidden back to the estate expressly provides that it shall "descend in accordance with the terms and provisions of the last will and testament of W. B. Gidden." It is true the conveyance further states that it is made subject to the debts of the business. That does not mean that the debts should be a preference charge against the property, but only that it should not be freed from the debts. The provision that the property should pass under the will is controlling; in fact, there is no conflict between the two provisions. All the property of the estate, real and personal, was subject to the debts of the estate in the order provided by law, and that order is this: For the payment of creditors the residuary estate must first be exhausted, then the specific legacies, other than that to the mother, abated pro rata, and for any indebtedness unpaid then resort to the specific legacy to the mother. The brothers Hill and L. A. Gidden, for any amount remaining unpaid of their money legacies out of the trust estate for the mother, are general legatees, and therefore must resort alone to the residuary estate after the payment of creditors. As we understand the record, that estate is insufficient to pay creditors.

We do not think the other questions in the case are of sufficient seriousness to call for a discussion. We find no other error in the decree of the chancellor. It follows

that the decree is reversed in part and affirmed in part. We think it the better course to remand the case for decree in accordance with this opinion.

Affirmed in part; reversed in part, and remanded.