## KENT *v.* McCASLIN, ADMR., ETC.

No. 41365  February 8, 1960  117 So. 2d 804

*Alton Fox Valentine,* Rosedale; *Valentine & Valentine,* Cleveland, for appellant.

*Walter Sillers,* Rosedale; *Charles C. Jacobs, Jr.,* Cleveland; *George P. Cossar,* Charleston, *Ben Caldwell,* Marks, for appellees.

GILLESPIE, J.

In a proceeding to construe the will of G. H. Lenoir, deceased, the chancery court adjudged that appellant, J. E. Kent, did not have the right to have the real property devised to him under the will exonerated from certain liens out of the personal property of the estate. Kent appeals.

G. H. Lenoir, now deceased, wrote his will in his own hand on May 4, 1954. The devise in question was: "To J. E. Kent my interest in Beulah Gin Co." Kent was not related to testator but had been an employee of the Beulah Gin Company since 1946. The will made no provision for the payment of debts; it contained no residuary clause; and less than half of his estate was disposed of by the will. That part of his estate not disposed of by the will descends to testator's second cousins who are his nearest of kin. The testator died about August 31, 1958, and his said will was probated and the administrator proceeded with the administration of the estate.

At the time the will was written testator owned an undivided one-half interest in the Beulah Gin Company property and the other half was owned by one McGowen, and testator and McGowen were operating the gin as a partnership under the name of Beulah Gin Company. On April 29, 1955, the testator and McGowen executed to Southern Cotton Oil Company (later assigned to Wesson Oil and Snowdrift Company, present holder, a deed of trust on the Beulah Gin Company property, including

the land, gin machinery, buildings, etc. This deed of trust secured three notes for $6,000 each, due yearly, with interest, and attorney's fee if not paid at maturity. Following the description of said notes the deed of trust contained a paragraph as follows:

"The said notes being due and payable to The Southern Cotton Oil Company, or order, with the distinct understanding and agreement between the parties hereto that no personal liability is incurred for the payment thereof by the individuals, first parties, who compose the partnership firm of Beulah Gin Company of Beulah, Mississippi, but that the tract of land, together with the gin, gin outfit and equipment, buildings and other improvements situated thereupon, and also any and all property, money and assets now owned or hereafter acquired and owned by the said parties of the first part as the property of said Gin Company, which alone shall be responsible for the repayment of the indebtedness hereinabove described, and with the further understanding and agreement between the parties hereto that in event of default in the payment of the aforesaid indebtedness or any part thereof, and foreclosure proceedings should be taken under the provisions of this instrument and the property sold hereunder, and if the purchase price received at the said sale fails to satisfy the said indebtedness, the said The Southern Cotton Oil Company or the holder of the indebtedness secured hereby, hereby promises and agrees not to institute any suit against the said first parties, or either of them, or to in anywise hold them, or either of them, personally responsible for the aforesaid indebtedness, but that the said The Southern Cotton Oil Company will look solely to the aforesaid gin and gin property hereinabove mentioned and described for payment of said indebtedness."

The deed of trust contained three paragraphs dealing with foreclosure in case of default, then the following paragraph:

"Any and all indebtedness which may be now, or hereafter during the life of this trust, owing by the parties of the first part to the said The Southern Cotton Oil Company, however evidenced, and any and all sums of money, or other valuable things, which may be hereafter, at any time before the payment in full of the entire indebtedness secured hereby, advanced to us, or for our account, or expended in equipping, repairing or improving the gin plant located on the premises hereinabove described, or for any repairs or improvements on said premises, or in the protection of said property as security for the indebtedness secured hereby, by The Southern Cotton Oil Company, or the holder of the notes secured hereby, or the trustee herein, shall be secured by this instrument, be payable on demand unless otherwise agreed, and on default shall be collectible in the same manner, with the same rate of interest and attorney's fees as hereinbefore provided for the collection of the notes hereinabove described."

At the time of testator's death, two of the $6,000 notes had been paid but the balance secured by this deed of trust was $22,148.05, consisting of the unpaid note of $6,000, plus interest and advances made for the use of Beulah Gin Company made subsequent to the date of the deed of trust and secured thereby. This indebtedness had not been probated in the estate of G. H. Lenoir at the time of trial but the time for probation had not then expired.

Nine days before his death and on August 22, 1958, testator acquired by quitclaim deed McGowen's half interest in the Beulah Gin Company property for a consideration of $20,000, of which tesctator paid $5,000 cash and gave McGowen his three personal notes for $5,000 each bearing six percent interest. McGowen retained a vendor's lien on the gin property as security for the said notes totaling $15,000. These notes were duly probated against the estate of G. H. Lenoir, deceased.

The estate of G. H. Lenoir, deceased, as of the date of death, consisted of personal property appraised at $49,-498.00, real estate valued at $158,350.00, including the Beulah Gin property valued at $50,000.00, plus unappraised money and personal property valued at $202,-364.78. Probated claims through February 13, 1959 totaled $41,813.84. There is no indication of other charges or claims against the estate except costs of administration and taxes.

■■ The appellant Kent took under the will the entire interest in the Beulah Gin property although at the time the will was written the testator owned only a half interest. The gift of ''my interest'' was sufficient to pass to Kent the after-acquired half interest. Appellees do not contend otherwise.

We consider first the question whether appellant's devise should be exonerated from the vendor's lien securing the notes due McGowen. This question has two points of inquiry: (1) Whether the doctrine of exoneration prevails in this jurisdiction, as to which there is no real dispute between the parties, and (2) whether the testator indicated an intention by express language or clear implication that the devise to appellant should not be exonerated from the vendor's lien out of the personal estate.

■■ The rule in this State is that the personal estate of a testate decedent is the primary source for the payment of his debts, and a devisee of real property is entitled to exoneration of his devise from the payment of testator's debts secured by deeds of trust or other liens out of the personal estate, unless a contrary intention be indicated by express language of the will or by clear implication. Gordon v. James, 86 Miss. 719, 39 So. 18; Anderson v. Gift, 156 Miss. 736, 126 So. 656; Gidden v. Gidden, 176 Miss. 98, 167 So. 785. This is the general rule elsewhere. 57 Am. Jur., Wills, Secs. 1474, 1475.

██ ██ The real point at issue on the question under consideration is whether the testator intended that appellant's devise should not be exonerated from the vendor's lien from the personal estate. The general rule is that such intention must be indicated by express language or by clear implication. 57 Am. Jr., Wills, Sec. 1475. It must be plainly evidenced by the will. Gordon v. James, 86 Miss. 719, 39 So. 18. Land devised is not subject to testator's debts until the personal estate is exhausted, unless the will expressly provides otherwise. Gidden v. Gidden, 176 Miss. 98, 167 So. 785.

The will of G. H. Lenoir contained no express provision that the devise to appellant should not be exonerated. If any such intention is to be found it must be implied from the use by the testator of the words ''my interest'' in the devise to appellant. At the time the will was written, the testator owned only a half interest in the Beulah Gin Company property. It was necessary to employ some appropriate words to limit the gift to the quantity of the estate then owned. Lenoir had a large and solvent estate. He made specific gifts of only a part thereof with a large part of his estate descending under the laws of descent and distribution to distant kin whom he did not mention in his will.

██ ██ Much is said in the briefs about the meaning of the word ''interest.'' This broad term may have many different meanings depending upon the context in which it is used. It is as broad a term as can be used to denote a property in lands. We are required by the authorities to construe the meaning of this term in the will in question by referring to the will as a whole, all the surrounding circumstances, and the fact that testator had at the time the will was written only a half interest in the property. (Hn 5) When we do this we have no doubt that the testator employed the term ''my interest'' to denote his title to the gin property. There is nothing to indicate that he meant thereby ''my equity subject to

any liens thereon.'' The rule is that an intention not to exonerate the devise must be clearly implied. Under all the circumstances we are of the opinion that there is no indication whatever of any intention not to exonerate the devise to appellant, and that the lower court was in error in holding that appellant took the gift of the gin property subject to the vendor's lien securing the McGowen notes.

Appellees rely on Howell v. Ott, 182 Miss. 252, 180 So. 52, 181 So. 740. In that case the phrase used in the will in the devise to Ott was ''all my right, title and interest.'' But the use of this phrase was not the only reason the Court held that Ott's devise was not entitled to exoneration. The testator specifically required that debts be probated before being paid by the executor; the estate was involved with debt; the testator fully disposed of her estate; and the exoneration of the devise to Ott would have eliminated special bequests made in the will to others. Some doubt as to the correctness of the decision in the Ott case was indicated in the recent case of Riegelhaupt v. Ostroffsky, (Miss.) 115 So. 2d 331. We do not think that the decision in *Ott* should apply to the present case. The application of *Ott* is necessarily limited to its peculiar facts.

The question whether appellant is entitled to have his devise exonerated from the lien of the deed of trust securing the amount due Wesson Oil and Snowdrift Company has two points of inquiry: (1) Was the $22,-148.05 thereby secured the personal debt of the testator, G. H. Lenoir, and (2) does the doctrine of exoneration require that the indebtedness secured by the lien be the personal obligation of the testator?

The first point presents no real problem. The provisions of the deed of trust given by the testator and McGowen and which is now held by Wesson Oil and Snowdrift Company are clear to the point that the indebtedness thereby secured was not the personal indebtedness

of the testator and McGowen. And this is true of any advances made after the execution of the deed of trust.

■ ■ The universal rule is that the doctrine of exoneration of a devise of real property at the expense of the personal estate does not apply when the indebtedness is not the personal obligation of the testator, absent any indication that such was the testator's intention. 57 Am. Jur., Wills, Sec. 1476; Annos. 5 A. L. R. 488, 72 A. L. R. 709; 120 A. L. R. 577. ■ ■ The doctrine of exoneration of realty at the expense of the personal estate is founded on the broad principle, recognized by the statutes of this State, that the personal property is the primary fund for the payments of the debts of a deceased person. When the burden on realty is not the personal obligation of the testator the foundation is removed from the doctrine of exoneration and the rule ceases to exist. ■ ■ We are therefore of. the opinion that the lower court was correct in holding that appellant was not entitled to have his devise exonerated from the lien held by Wesson Oil and Snowdrift Company, and its action in this regard is affirmed.

The decree of the lower court is reversed and judgment is rendered here in favor of appellant as to the vendor's lien held by McGowen, and on remand appellant's devise will be exonerated from this lien. Otherwise the decree is affirmed.

Affirmed in part, reversed in part, and remanded.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.