FIRST NAT. BANK OF ABERDEEN *v.* PEUGH.

[93 South. 355.   No. 22594.]

SALES. *Symbolical delivery of property held sufficient.*

Under an agreement to transfer the title and possession of personal property for a valuable consideration, a symbolical delivery of the property by delivery of the key to the building in which the property is stored, and also the transfer of the lease of such building and the surrender of the right of possession thereof, is a sufficient delivery of the property to complete the sale and transfer of the title thereof.

129 Miss.—52

Appeal from circuit court of Monroe county.

Hon. C. P. Long, Judge.

Attachment suit by W. G. Peugh against W. L. Perkins and another, in which the First National Bank of Aberdeen interposed a claim to the attached property. From a judgment for plaintiff in attachment, the claimant appeals. · Reversed, and judgment rendered for claimant.

*Paine & Paine,* for appellant.

Did the delivery in the case measure up to the standard of a legal delivery?   Mr. Rawles in the 3rd edition of Bouvier Law Dictionary, on page 829 says: "Originally delivery was a clear, unequivocal act of giving possession accomplished by placing the subject to be transferred in the hands of the transferee or his agent or in their respective warehouses, vessels, carts and the like; but in modern times it is frequently symbolical, as by the delivery of the key to a room containing goods." See authorities cited in this statement.

In the case of *McWillie* v. *Van Vacter, et ux.,* 35 Miss 429, it is stated as the law of the state as to what constitutes delivery that a delivery is the act by which the donor parts with title and possession.

Under the testimony of Brown, page 36, and Sykes, page 25, there was a symbolical delivery of the articles. Brown on page 37 of the record says the bank had no place to store the property, hence the delivery of the key to the little office was a symbolical delivery and was valid and good as against the appellee.   The symbolical delivery being a substitute for actual delivery, because and owing to the fact that an actual delivery was impracticable.   The property was left in the office by appellant because no rent would accrue and because the appellant had no place to store the same, pending a disposition of the property.   As appears from 35 Cyc., page 309, discussing sales of this kind the writer says:

"So no actual delivery and transfer of possession is necessary where from the nature or situation of the property it is impossible or impractical as in the case of goods, which at the time of sale, are situated at a distance or which are of such a bulky or ponderous nature that an actual manual delivery is impractical." See authorities referred to again in 12 R. C. L., page 567, that author says: "When from the nature of the agreement the vendor is to make the appropriation, then as soon as any act is done by him identifying the property and it is set apart with the intention unconditionally to apply it in the fulfilment of the contract, the title vests and the same is complete."

In the case at bar on page 25 Sykes says he told Perkins that while he, Perkins, thought he could send the money back from Arkansas, he, Sykes, knew he could not do so and that he, Perkins, would have to turn over to the bank, his office furniture he had given the mortgage on, so the bank could sell it, if anybody came along and wanted to buy it. Again on page 27 of the record Sykes said that Perkins thereupon turned it over to the bank as demanded and that in a week or two the key to the little office containing the furniture was turned over to the appellant, and it had the key ever since that time.

We submit that under the law cited and the testimony the case should be reversed and judgment rendered here for the appellant.

*Leftwich & Tubb,* for appellees.

Appellant bases its right to recover in this case on a verbal transfer of title to the property in question accompanied by an alleged symbolical delivery. This verbal transfer of title was made according to their contention contemporaneously with the giving of a deed of trust on said property, the deed of trust being dated July 5, 1921, several months prior to this attachment, and it being exhibited in the record at p. 22. The symbolical delivery is alleged to have been made a week or ten days after the

alleged contemporaneous giving of the deed of trust and the verbal surrender of title to the property by mailing a key to the office by Perkins from Arkansas to the appellant. A mere glance at the description of the property in the deed of trust shows that it is void for uncertainty and for the reason objection to its introduction was sustained by the court. Its voidness being virtually conceded and the alleged symbolical delivery relied on, yet Mr. Sykes, president of appellant bank, in answer to a question by the court as to which ground the bank claimed it on, replied, "I would say by virtue of both." So we have the anomalous situation of the legal title being claimed by the appellant to be both in it and in E. H. Poe, trustee, in the deed of trust, who was not even made a party all at one and the same time. With this inconsistency they lay the the foundation for their other proof which discloses inconsistencies equally amazing.

The mysterious key on which appellant bases its whole case was extremely hard to locate in the proof and seemed equally inconstant in the choice of its companions during the two months preceding the attachment. This was an important transaction involving the alleged present transfer of property in satisfaction of a loan of five hundred dollars according to appellant's contention, and yet two months afterwards and two days after the property had been attached, we find Mr. C. C. Brown, one of the assistant cashiers (the bank has two assistant cashiers, but no cashier) an old employee of the bank, telephoning to Hector, whose office was just across the road from the Perkins office and asking for a key to Perkins' office in order to get in the latter. On cross-examination at p. 36, he had to admit that he didn't even find out that the bank had become the owner of the property and held the key thereto until after the telephoning above referred to, and that was two days after the attachment. Mr. Brown then explained that Mr. C. E. Hamilton, the other assistant cashier of the bank, carried the key and on that afternoon was out playing golf and that it was with him there. Mr. Sykes

testified that it was general knowledge in the bank, yet his assistant cashier knew nothing of it two months afterwards. Mr. Sykes stated also that Mr. Hamilton was the only man in the bank who knew where the key was kept. Both of these witnesses traced everything to Mr. Hamilton, both the keeping of the key and the intimate knowledge of the transaction, yet he was neither called nor put on the stand to testify. The man in whose bosom rested all of the explanations, the man who constituted the missing link, as it were, in their weak chain of title, was not even introduced. What is the obvious conclusion of this circumstance? There can be only one, that is that his memory didn't coincide with theirs. If he had possessed the knowledge they gave him credit for, it would have greatly bolstered up a very weak case and it is only reasonable to assume that they would have used him on the stand. The lower court referred to that in his opinion and undoubtedly that circumstance was very persuasive.

Another most damaging circumstance which helped destroy appellant's case was the fact that officers of the bank claimed the property by virtue of the deed of trust soon after the levying of the attachment. They claimed this both to appellee, Peugh, and to the deputy sheriff, Jones, and this was two months after the alleged present delivery of the property to claimant below, by virtue of the symbol thereof, the key. They even went to the extent of demanding an indemnifying bond on that ground. There is but one conclusion. This very finely drawn and technical delivery was an afterthought after the discovery that the deed of trust was void for uncertainty of description.

Another circumstance that strongly supports appellee's theory of the case is the second deed of trust taken by the bank on different property to secure part of the same debt. This deed of trust was brought out on cross-examination and introduced at appellee's request.

It will be noted that at page 21 it was understood that all of the testimony of Mr. Sykes would go in under objection. That method was taken because it was all before

the court. We submit that none of the testimony regarding the verbal agreement made at the same time the deed of trust was executed was competent. Parties can't put one thing in writing and at the same sitting have an entirely different agreement verbally regarding the same subject-matter and thereby vary a written agreement by parol and rely on the latter. We think no authorities are needed to support that rule of law. But it went before the court, was considered and weighed by him, and he found the weight of evidence against appellant. They got much more than they were entitled to when they were allowed to even prove this alleged delivery.

Appellant is forced to rely on a symbolical delivery in this case. There was never a change of actual possession. The property remained where it was originally until the sheriff moved it. We earnestly submit, that conceding for the sake of argument only, that all of appellant's testimony is correct, that there was no delivery in the eyes of the law. The rule concisely stated and supported by abundant authorities is found in 12 R. C. L., page 565, par. 84, a part of which we quote.

Ordinarily as between the parties a delivery is not essential to complete the sale, but as to creditors and subsequent *bona-fide* purchasers, a delivery of some kind is indispensable. While it is hard to lay down a general rule applicable to all cases, it is well settled that there must be an actual delivery as distinguished from a symbolical or constructive delivery, whenever the nature of the property and the position of the parties renders it practicable to make such a delivery, and the acts that will constitute a delivery will depend very much on the nature and quantity of the property sold.

The effect given to a constructive, or symbolical delivery, is founded on necessity and its effect does not extend beyond the immediate necessities of a case. Sale of a cargo at sea, or sale of a great bulk of wheat, are examples where necessity demands symbolical delivery. But even when necessity demands it, the law requires the pur-

chaser to avail himself of the first opportunity to complete the delivery by actual change of possession. He must make the transfer notorious, 12 R. C. L., pp. 566-7. The reason for this sound rule is obvious.

This record does not make a case that brings the alleged transfer within the excepted class. On the other hand it shows the articles to be small, easily transportable. It shows the distance from town a little over one mile. Yet, two months afterwards, with the daily opportunity for appellant to move the property and thereby complete the sale, we find it undisturbed in its original location in the alleged grantor's office. We contend that appellant has not made out a case of delivery under the law, even by conceding everything in its favor.

The two cases cited by counsel, *Baldwin* v. *Flash etc.*, 59 Miss. 61, and 58 Miss. 594, are not controlling here for in these cases there was a writing executed at the time of the alleged delivery defining the trust held by the trustee, and the transactions there were between the grantors and holder of the legal title, the trustee. In the case at bar, the grantor parts with the legal title to E. H. Poe, trustee, for the use of appellant, by solemn writing in one breath, and in the next is pictured as passing the title which had already passed to Poe, the trustee, to the beneficiary, appellant. In those cases there was an actual and present surrender of the goods. In this case there was no such surrender at all, and only ten days afterwards was there a surrender by symbol. Note the words of Judge Chalmers in the case referred to last decided, 59 Miss. 67: "This the court held was the reservation of a benefit to himself, and made the assignment fraudulent. This would have been true if the attachment had been levied before the actual surrender of the goods." On the same page a little lower down: "The possession taken was the effective thing."

But conceding for the sake of argument only that these cases are in point for appellant, they simply hold that the rights of the parties and the validity of the surrender are

to be tested by the facts and circumstances existing at the date of the surrender, and that the *bona-fides* of the transaction must be submitted to the jury with all the facts laid before them. Of this, appellant certainly had the full benefit. It was allowed to submit far more than it had a legal right to. The jury in this case was the court and it, found against it. Appellant cannot complain for there was certainly overwhelming evidence to support the verdict. The court simply found the weight of evidence with the appellee and against appellant and rendered a verdict accordingly. There is nothing manifestly wrong about it and under the rules of this court the case must be affirmed.

Counsel assert that there is no evidence denying appellant's theory. We submit that the evidence is abundant. The failure of appellants to introduce Mr. C. E. Hamilton, its assistant cashier, is enough in itself to discredit their whole case. We might also observe that Mr. W. L. Perkins, one of the original defendants, was necessarily an important witness for appellant. His testimony was available by deposition if they had chosen to use it.

We earnestly submit that a careful reading of the record will disclose the absolute justness of the verdict and that the case should be affirmed.

COOK, J., delivered the opinion of the court.

Appellee instituted an attachment suit in the circuit court of Monroe county against W. L. Perkins and Hal Perkins, who were at the time nonresidents of the state. The attachment writ was executed by levying on certain office equipment, which was located in an office formerly occupied by W. L. Perkins. At the time the levy was made the door of the office was locked, and the officer inventoried and valued the property levied on by viewing it through a window of the office building. There was a judgment by default in favor of appellee on both the attachment and debt issues, and, the appellant having interposed a claim to the property attached, the proper issue was made up,

and a trial of this claimant's issue was had before the judge without the intervention of a jury. At the conclusion of the evidence there was a judgment in favor of the plaintiff in attachment, and the claimant appeals.

There is very little, if any, real conflict in the evidence. The president of the appellant bank testified that on the 5th of July, two months before the levy of the attachment writ, W. L. Perkins applied to the bank for a loan of five hundred dollars; that one of the assistant cashiers of the bank let him have one hundred and fifty dollars, and took from Perkins one note for one hundred and fifty dollars and one for three hundred and fifty dollars, secured by a deed of trust on his office furniture, but declined to then advance the money on the three hundred and fifty dollar note; that for several days thereafter Perkins sought to secure this sum of money from the witness Sykes, but, being familiar with Perkins' financial circumstances, he declined to make the loan; that Perkins was to leave Aberdeen on July 9th, four days after the execution of the two notes and deed of trust; that, a short time before the hour fixed for his departure, Perkins came into the bank and again begged the witness to let him have the three hundred and fifty dollars balance on the proposed loan; that he informed Perkins he would not let him have this money as a loan on the security of the deed of trust which he had executed, but that he would let him have this amount provided he (Perkins) would turn this office furniture over to the bank; that Perkins had the office building where this furniture was stored leased until November 1st, thereafter with the rent thereon paid to that date; that Perkins then agreed to transfer the property to the bank and deliver possession thereof, as well as the balance of the lease on the office building, and agreed to deliver to the bank the key to this building; that upon the transfer of this property to the bank he paid to Perkins the three hundred and fifty dollars balance originally applied for; that a few days thereafter the key to the office where this property was stored was delivered to the

bank, and had thereafter remained in the possession of the bank; that about six weeks before the levy of the attachment the bank took from this office a typewriter for use in the bank, and at the time of the levy had negotiated a sale of an adding machine. In response to a question by the court as to whether he claimed the property by virtue of the trust deed or by virtue of the transaction between the witness and Perkins afterwards, the witness replied:

"I should say by virtue of what happened afterwards. I don't know as I drew any fine distinction about that. I would say by virtue of both. I wasn't willing for it to remain in the form of a deed of trust. I wanted him to deliver the property to us, so, if we found a purchaser, we could sell it, and not be bothered with going through the form of advertising it. He said that was all right with him, and he turned the property over to us, and afterwards delivered us the key."

The property transferred consisted of two iron safes and various other articles of office equipment, and there was evidence that the bank had no place to store this property, except in the office building where it was located at the time of the transfer. On behalf of appellee there was testimony that, after the levy of the attachment writ, some officer of the bank told appellee that the bank held a deed of trust on the property, and that one of the assistant cashiers of the bank told the officer who made the levy that the bank held a deed of trust on this property, and demanded an indemnifying bond. It is admitted that the deed of trust executed by Perkins to the bank on July 5, 1921, was void on account of an insufficient description of the property attempted to be conveyed thereby.

Upon the facts in this record we think the claimant was entitled to recover possession of the property involved. The testimony that the property was transferred to the bank long before the intervention of the attachment lien is direct and positive, and there is nothing whatever in this record to dispute this testimony of the bank's officers who handled the transaction. The failure of the bank to

remove the property from the building in which it was located is sufficiently accounted for by the fact that the property was bulky and the bank had no other place to store it, and, having acquired the balance of the term of the lease, the property could be left in this building without the accrual of rent thereon.  Under the agreement to transfer the title and possession of the property in consideration of the payment of three hundred and fifty dollars, the symbolical delivery of the articles by delivery of the key to the building in which the property was stored, in connection with the transfer of the lease of such building and the surrender of the right of possession thereof, was a sufficient delivery of the property to complete the sale and transfer of the title thereof.

Reversed, and judgment here for claimant.

*Reversed.*