HOWELL *v.* OTT.

(Division B. April 4, 1938.)

[180 So. 52. No. 33095.]

(Division B.    May 30, 1938.)

[181 So. 740.   No. 33095.]

G. **Edw. Williams** and **E. F. Whittington,** both of Clarksdale, for appellant.

**Roberson, Cook & Luckett,** of Clarksdale, for appellee and cross-appellant.

260

Argued orally by **G. Edw. Williams,** for appellant and by **Semmes Luckett,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

On January 10, 1934, Mrs. Virgie M. Cutrer departed this life, leaving a will in which Y. E. Howell was named as executor, with directions that he be permitted to qualify and act as such without giving bond or reporting to any court or tribunal in the premises. The will, bearing date of October 6, 1932, reads as follows:

"I, Virgie M. Cutrer, a resident citizen of Clarksdale, in Coahoma county, Mississippi, being conscious of the uncertainty of life, and the certainty of death, and being in possession of my mental faculties, and desiring to make disposition of my property to take effect at my death, do make, publish and declare, this to be my last will and testament, hereby revoking all other wills and codicils whether written or spoken by me.

"Item One: I desire all my just debts to be paid, provided they are probated and allowed within the time and in the manner required by law.

"Item Two: I hereby give, devise and bequeath to my beloved friend Virgie Smith (Mrs. George Raymond Smith), of Los Angeles, California, if she is living at the time of my death, the sum of Five Hundred Dollars, to be paid by my executor as soon after my death as practicable.

"Item Three: I hereby give, devise and bequeath to my nephew, Reginald D. Ott, to belong to him in his own right, all of my right, title and interest in and to the following described property, to-wit: The two store rooms on the north side of Lot Eighteen in Block 'H' in the City of Clarksdale, Mississippi, according to the Polk Map of said city. Lot Number Eighteen in Block 'B' in the Edgefield addition to the city of Clarksdale, Mississippi. Lots Eight and Nine in block 'P' in the City of Clarksdale, Mississippi. The North half of Southwest quarter, and Southeast quarter of Northwest quarter of Section Thirty, in Township Twenty-seven, Range Four West, in Coahoma County, Mississippi.

"Item Four: I hereby give, devise and bequeath to my sister-in-law, Alice Cutrer Mixon, of Osyka, Mississippi, the following described property, situate in the City of Clarksdale, Mississippi, to-wit: The South store room situated on Lot Eighteen in Block 'H' in the City of Clarksdale, Mississippi, according to the Polk map of said City on record in said county.

"Item Five: I hereby give, devise and bequeath to my servant, Percy Brooks, in consideration of his long and faithful service to me, all of my right, title and interest in and to Lot Number Sixteen in Block Twenty-eight, in the Ashton Land Company's Addition Number Two to the City of Clarksdale, Mississippi.

"Item Six: I hereby give, devise and bequeath to my beloved niece Alluwee Ott Howell, who has shown genuine affection for me in my declining years, the following described property, situate in the City of Clarksdale, in Coahoma County, Mississippi, to-wit: All of my right, title and interest in and to Lots Number Ten, Eleven and Twelve in Block 'W' in the City of Clarksdale, Mississippi, according to the Polk map of said City, of record in book 'B' at page one of the land records of said county. Lot Number Nineteen in Block 'B' in Edgefield addition to the City of Clarksdale, Mississippi. Lots thirty-three, thirty-four, thirty-five and thirty-six in Block Eleven in the Ashton Land Company's addition Number Two to the City of Clarksdale, Mississippi. And, also, I hereby give, devise and bequeath to my said niece Alluwee Ott Howell, all the rest and residue of my estate, real, personal and mixed, no matter what may be the description thereof, nor where located, to belong to her in fee simple, absolute and likewise to her heirs and assigns.

"I hereby nominate, constitute and appoint Y. E. Howell, to be the executor of this my last will and testament, and hereby direct that he be permitted to qualify and act as such without the necessity of giving any

bond, or the necessity of reporting to any court or tribunal in the premises.

"In testimony whereof, I have hereunto set my hand, at Clarksdale, Mississippi, on this the 6th day of October, 1932."

Y. E. Howell probated the will and gave notice to creditors to probate their claims, this notice being dated the 12th day of June, 1934, and proof of publication was filed July 7, 1934. On December 19, 1934, the executor filed his report with the chancery court, listing assets in his hands, as follows:

| | |
|---|---:|
| Cash on deposit, | $2,969.42 |
| Dividend claim Planters National Bank, | 4.50 |
| Dividend claim Planters National Bank, | .25 |
| Deposit in Bank of Clarksdale, | 6.35 |
| Deposit in Bank of Clarksdale, savings, | 109.84 |
| Rent received from Al Nachman partnership, accrued to May 31, 1934 | 649.48 |
| Rent from Al Nachman, country land, | 225.30 |
| Cash at home of testatrix, | 161.00 |
| Total receipts from all sources, | $4,126.14 |

The executor listed the expenditures as follows:

| | |
|---|---:|
| To Irene Johnson, nurse | $ 10.00 |
| To Mrs. May, nurse, | 28.00 |
| McInnis-Porter Funeral Home | 685.00 |
| City of Clarksdale, lights, | 9.87 |
| Dr. Julius Levy | 36.00 |
| Wrenn's Market & Grocery | 5.23 |
| Luter Drug Company | 12.14 |
| Southern Bell Telephone | 6.02 |
| Mississippi Power & Light Company | 6.93 |
| Sunflower Laundry, | 3.94 |
| Stovall Drug Company | 3.83 |
| Total, | $806.96 |

The executor further reported that he had paid to

Mrs. George Raymond Smith, of Los Angeles, the specific legacy of $500 as provided by the will; that he had paid in and about the administration of the estate, probating the last will and testament, and management of the said estate, the following sums:

To E. F. Whitting, attorney, services in probat-
  ing the will and administrating the estate, $1,000.00
To Y. E. Howell, Executor, commissions,       288.83
To court costs paid,                           16.65

                Total of expenditures,      $2,612.44

The executor reported that he had on hand, after paying the expenses, the sum of $1,513.70. He further stated that at the time of the death of the testatrix there was in the iron safe, in the residence of said testatrix, property as stated, such property being in said safe, and on said premises from and after July 1, 1932, to the date of her death, as follows: One Liberty bond, $50.00; one certificate of stock of Mississippi Power & Light Company for 20 shares, and one certificate of stock in said company for 10 shares, all of the par value of $3,000, but at this time of doubtful value; note of D. O. Monasco for $500, valueless; note of A. H. Hamner for $200, valueless; note of Al Nachman for $750, which he claims has been paid; one note of Jake Baskind for $440, of little value; two claims against the Planters National Bank, in liquidation, value less than $10; and one 1930 Model Hupmobile auto, valued at $200; and one note for Mrs. Hugh Sample for $500.

The executor represented that none of this property, mentioned above, has been in his hands; and he is advised that the same is claimed by Alluwec Ott Howell, by virtue of a deed executed in her favor by the testatrix about July 21, 1932, and recorded. He further states that all of the probated claims and specific legacies had been paid, and, the time for probating claims having expired, the costs of administration had been paid; and,

inasmuch as Alluwee Ott Howell is named as the residuary legatee in the will, she was entitled to any and every kind of property left after payment of debts, legacies, and costs of administration, and the executor paid to the said Alluwee Ott Howell the remainder of the funds in his hands, amounting to $1,513.70, and released and delivered the above-mentioned property to her, and she has acquitted him thereof.

On the 19th day of December, 1934, decree was entered approving the account; but no notice had been served on the devisees or legatees to appear to contest the final report.

On April 11, 1936, Reginald D. Ott, the appellee, filed a petition in the chancery court, praying that the decree be set aside and held for naught, and that the executor be directed to file in the court a total and complete inventory, in the manner prescribed by the statute. The petition set forth that Ott was a legatee under the will, which fact was known to Y. E. Howell, and that the petitioner was interested in the estate; that the will was properly of record; and that no notice of any kind had been served on petitioner as to the filing of the account; that he was at the time of filing of the petition a resident of the city of Clarksdale, well known to Y. E. Howell; and that he had no opportunity of examining the account or making objection thereto; and that the court, on the facts stated, had no opportunity to approve the said final account.

The appellant, Howell, answered this petition, admitting that letters testamentary were issued under the last will and testament of Mrs. Cutrer, and that he acted as executor under the will; denied that he had never filed an inventory of the assets of the estate; admitted that on the 19th of December, 1934, he filed a final report with the court, and that a decree was rendered approving the report; admitted that Reginald Ott was a devisee under the last will and testament of deceased, but

denied that by reason thereof Ott was interested in any portion of the estate being administered, with the exception of his specifically described real estate, which real estate was alleged to be in possession of the petitioner at the time; and admitted that upon filing the final report no summons was issued or served upon the said petitioner or any other devisee under the will; denied that petitioner had no opportunity to examine the accounts or to make objections thereto; and denied that the petitioner was entitled to a decree canceling the decree of December 19, 1934; stated that pursuant to the direction of the will, he had paid Mrs. George Raymond Smith the only specific legacy mentioned in the will; and that he was relieved from any necessity to report to any court or tribunal; but that he did report on December 19, 1934, filing a final account to constitute a complete record of the transaction.

The executor, Y. E. Howell, further set up in his answer to the petition that the detailed report made and approved December 19th included an inventory of all personal property in the hands of the executor; and denied that the petitioner, Ott, had any interest in said property received and administered.

The court entered upon the hearing, and took testimony bearing on the matter, which is rather voluminous.

On the 7th day of January, 1933, Mrs. Cutrer executed a deed of trust upon the property embraced in the will, to secure Y. E. Howell and E. F. Whittington for certain debts, one being evidenced by a note of $1,000, payable to Y. E. Howell or bearer on January 7, 1934, one note for $3,000, payable to Y. E. Howell or bearer, on January 7, 1935; and one note for $1,000, payable to E. F. Whittington on January 7, 1934, all notes bearing interest at 6 per cent. per annum from date until paid, interest payable annually.

On the 21st day of July, 1932, Mrs. Virgie M. Cutrer executed a deed to Alluwee Ott Howell, conveying cer-

tain real estate, and also certain personal property described in the deed, "together with all property, personal and mixed, furniture and pictures, silver and glass ware, and generally all personal property of any and every kind and character now in the residence on said lands, and on or belonging on said lands, no matter what may be the description thereof. To have and to hold unto the party of the second part, her heirs and assigns, in fee simple, forever. But it is expressly provided that the party of the first part hereby and by these presents retains a life estate in the said premises, and the right to use and occupy the said premises and property during the term of her natural life." This deed was filed for record August 1, 1932.

On the 1st day of August, 1932, Mrs. Virgie M. Cutrer executed a deed of trust to Alluwee Ott Howell upon some of the real estate devised in the will, to secure certain notes described in the deed of trust as one note for $500, due August 1, 1933, one note for $1,000, due August 1, 1934, and one note for $2,000 due August 1, 1935; one note for $1200, due August 1, 1936; all of said notes bearing interest at the rate of 6 per cent. per annum from date until paid, payable annually. This deed of trust was filed August 1, 1932. Y. E. Howell furnished the money which this deed of trust secured, but the deed of trust was made to his wife. Howell, however, in his testimony, claimed that the note and deed of trust, in fact, belonged to him.

On the 7th of January, 1933, Virgie M. Cutrer executed and acknowledged the following assignment of $3,800 note secured by deed of trust: "For value received I hereby transfer and assign to Alluwee Ott Howell that certain note for $3,800.00 secured by a deed of trust recorded in book 230, page 219 of the land mortgage records of Hinds county, Mississippi, at Jackson, dated August 26, 1930, executed by Margaret and John Tolke, Jr. This 7th day of January, 1933;" and acknowledged

the same day, and filed for record the 21st day of June, 1934.

Mrs. Cutrer, the testatrix, seems not to have had any direct heirs; Mrs. Howell was a niece by marriage, and Reginald Ott a nephew by marriage. It seems that these were the niece and nephew of Mrs. Cutrer's husband, who died in 1919.

It is shown by the testimony that Mrs. Cutrer was very fond of Mrs. Howell, who had been good to her; and that it was her intention for Mrs. Howell to have the household effects mentioned in the deed above set out, conveying the certain lot on which the residence was situated, and the personal property therein. A deed of trust given August 1, 1932, for the sum of $4,700, was in the name of Alluwee Ott Howell; but the money was furnished by Y. E. Howell, who owned the notes and deed of trust, as he admitted; and on this note and deed of trust he actually advanced to Mrs. Cutrer, according to the record, $4,376.55. These notes and deeds of trust were given mainly to pay off an execution which had been levied on all the property of Mrs. Cutrer, she having signed a supersedeas bond with one Thomas, against whom a judgment had been rendered, and also rendered against Mrs. Cutrer. The note for $4,000, given January 7, 1933, and secured by a deed of trust on lands therein described, was given for the purpose of paying taxes and other expenses, and also for the purpose of having a fund upon which Mrs. Cutrer could draw for her needs.

The money was not actually set aside by Mr. Howell, who entered a credit for $4,000 on his books; and against that credit drew on his own funds to pay state, county, and city taxes, and some other items. The circumstances are these: At that time Mrs. Cutrer was without ready cash, and owing to the existing financial conditions banks were not making loans, and it was very difficult to get money. It was the idea of Mr. Howell and Mrs. Cutrer

that it would be better for her to leave the money with Mr. Howell than to place it in a bank, under existing circumstances. One of the notes embraced in that deed of trust called for $1,000, payable to Mr. E. F. Whittington, who owed Mr. Y. E. Howell money, and the note was transferred by Whittington to Howell, who gave the former credit therefor.

On January 20, 1933, the sum of $600 came into the possession of Mr. Howell for the benefit of Mrs. Cutrer; and on the 8th day of June, 1933, $2,500 was received for Mrs. Cutrer by Mr. Howell. Of this latter amount the sum of $250 was paid to Mr. Whittington at her request, for services rendered Mrs. Cutrer; and $250 in cash was turned over to Mrs. Cutrer .

Y. E. Howell treated the $4,000 entry on his books, under agreement, as cash lent to Mrs. Cutrer; but, as stated above, no cash was actually set aside at the time. Mr. Howell did not then have in his bank account that amount of money; but he had bonds and other assets from which he could realize the money at any time, on deposit in his safety lockbox at the bank, and could have paid the $4,000 on demand being made by Mrs. Cutrer.

The note and deed of trust securing the $4,000, and also the note and deed of trust for $4,700 , in the name of Mrs. Howell, by stipulation bore interest at 6 per cent., payable annually. Mr. Howell handled this account on his books, as shown by Exhibit D to his testimony, as follows:

| Date 1933. | | | Debits | Credits | Balance |
|---|---|---|---|---|---|
| Jan. | 7 | Proc. $1,000, $3,000 notes | | 4,000.00 | 4,000.00 |
| | 9 | Co. taxes V.M.C. '32 L.A.R. | 333.78 | | 3,666.22 |
| | 9 | Cy taxes V.M.C. '32 City | 509.04 | | 3,157.18 |
| | 17 | Co. taxes C & N. '32 L.A.R. | 299.42 | | 2,857.76 |
| | 20 | By cash from you | | 600.00 | 3,457.76 |
| | 26 | Cy taxes ½ C & N '32 City | 486.00 | | 2,971.76 |
| Jun. | 8 | By amt. E.F.W. atty (Thomas) | | 2,500.00 | 5,471.76 |
| | 8 | Fee E.F.Whit (your req.) | 250.00 | | 5,221.76 |
| | 8 | Cash to you | 250.00 | | 4,971.76 |
| Aug. | 1 | Mrs. Y.E.H. on it. on 4376.55 | 262.59 | | 4,709.17 |

1934.

| Date | | Description | | Amount |
|---|---|---|---|---|
| Jun. | 7 | On Int. on $4,000 | 240.00 | 4,469.17 |
| | 7 | On Int. on 1,000 E.F.W. note | 60.00 | 4,409.17 |
| Feb. | 3 | Cy taxes V.M.C. '33 city | 503.28 | 3,905.89 |
| Feb. | 3 | Cy taxes V.M.C. '33 city | 503.28 | 3,558.58 |
| Mch. | 3 | Edna 19 wks. @1.75 3wks @ $2wk | 39.25 | 3,519.33 |
| | 3 | Majestic Hotel Oct. & Nov. H. Spgs. | 67.60 | 3,451.73 |
| | 3 | Sadie Massey (nurse) | 10.00 | 3,441.73 |
| | 12 | Sadie Massey $7(19) $7(24) $7 | 21.00 | 3,420.73 |
| | 24 | J.H., J. & Co. Ins. Furn. | 67.84 | 3,352.89 |
| | 24 | Luter Drug Co., drugs 7/31/32 to 3/1/34 | 63.28 | 3,289.61 |
| Apr. | 2 | Sadie Massey (nurse) | 7.00 | 3,282.61 |
| | 6 | City C'dale Redemp. lot 22 B, 1 Reuter | 19.67 | 3,262.94 |
| | 9 | Luter Drug Co. (Drugs) | 17.15 | 3,245.79 |
| | 9 | Sadie M. $7 (16) $7 | 14.00 | 3,231.79 |
| | 23 | Sadie M. | 7.00 | 3,224.79 |
| May | 1 | Sadie M.$7. Who Gro. (beer)2.65 | 9.65 | 3,215.14 |
| | 8 | Sadie M. $7 Wm. Luter D. Co. 15.10 S. M. $7 | 29.10 | 3,186.04 |
| | 22 | Bob S. Repr. Ashton House | 2.00 | 3,184.04 |
| | 23 | Sadie Massey | 7.00 | 3,177.04 |
| | 23 | J.H.J. & Co. Ins. prem. | 85.20 | 3,091.84 |
| | 23 | Powers & Co. mdse. $5 S.M. $7 | 12.00 | 3,079.84 |
| Jun. | 4 | O. Johnson $5 S.M. $7 | 12.00 | 3,067.84 |
| | 4 | Landry's Gowns etc., 4.45 Luter Drug Co. 12.39 | 16.84 | 3,051.00 |
| | 4 | Stovall Drug Co. drugs | 1.89 | 3,049.11 |
| | 4 | Y.E.H. Clk Redem. Lot 22B 1 R | 26.74 | 3,022.37 |
| | 7 | Dr. J. Levy acct 16.00 a/c Wren mkt. 9.13 | 25.13 | 2,997.24 |
| | 7 | Armstrong Drug Co. 1.28 City C'dale W & L 7.38 | 8.66 | 2,988.58 |
| | 8 | Clarence Saunders 1 ham | 3.98 | 2,984.60 |
| | 9 | Liberty Cash Groceries | 8.18 | 2,976.42 |
| | 9 | Sadie Massey nurse | 7.00 | 2,969.42 |
| | 11 | Transferred to Y.E.H. Exec. | 2,969.42 | |

After the court set aside the original decree of December 19, 1934, Mr. Ott filed more specific objections and allegations, setting out the transactions complained of by him, and the appellant filed answers specifically admitting and denying the particular matters contested,

giving his version of the administration of the affairs and transactions involved. These pleadings are too lengthy to set forth, but it was alleged and admitted that Ott had an interest sufficient to contest the administration. It was alleged and admitted that on the note given by Mrs. Cutrer to Mrs. Howell, wife of Y. E. Howell, there was advanced or paid to Mrs. Cutrer only $4,376.55. Mr. Ott, in his objections, in paragraph 10 thereof alleged in substance that Y. E. Howell had a lien on all the real estate owned by Mrs. Cutrer at the time of her death, covered by specific devises, and that Mrs. Alluwee Ott Howell was the residuary legatee under the will, and that it was the duty of Y. E. Howell to probate the notes held by him for the sum mentioned, contending that it was the duty of the executor to use the personal assets of Mrs. Cutrer toward the liquidation of her debts, and particularly the debt of the notes owned by him; but that he failed to probate them, and refused to take charge of the personal property of Mrs. Cutrer at her death; that instead of administering her personal property and applying it to the saisfaction of the debts, he permitted his wife to take charge of it; and set forth that the property which he claimed should have been administered, which included the household furniture, certain notes and bonds contained in the safe in the residence of Mrs. Cutrer, and notes and deeds of trust for $3,800, executed by John and Margaret Tolke, secured by deed of trust on property in Jackson, Miss., belonging to Mrs. Cutrer at her death.

The appellant denied that the property mentioned was the property of Mrs. Cutrer at the time of her death, and that it was his duty to probate said notes, or any of them, against the estate; denied that it was his duty, under the circumstances, as executor, to use the assets, particularly the personal assets of the estate, in liquidation of the debts evidenced by the notes and secured by deeds of trust; and denied that he failed to use her per-

sonal property of the estate in the liquidation of debts; denied that he refused or failed to take charge of any personal property owned by Mrs. Cutrer at her death; and denied that Mrs. Cutrer was the owner of property set forth in said paragraph 10 of the objections, but alleged that all of such property belonged to his wife. · He set forth in the answer that the Tolke note was assigned in writing to his wife prior to Mrs. Cutrer's death, the assignment having been heretofore set forth.

As to the personal property set forth in the said contest, in paragraph 10, Mrs. May, who was nursing Mrs. Cutrer during her last illness, testified that the household property was given to Mrs. Howell by Mrs. Cutrer; that on Tuesday prior to her death on Sunday, when the witness returned to the room after lunch, Mrs. Cutrer had lost a ring from her finger, in the bed; that she had the witness take the rings off her fingers and give them to Mrs. Howell, the witness tied them into a piece of cloth that was left from dressing a cancer, and delivered the rings and earbobs and keys to Mrs. Howell at Mrs. Cutrer's request; that Mrs. Cutrer said, "Everything in here belongs to Alluwee Howell; everything I have." She gave Mrs. Howell the keys to the house and garage and safe, and the jewelry; and Mrs. Howell turned the combination of the safe; that her lawyer, Mr. Whittington, was standing at the foot of the bed when Mrs. Cutrer made the remark, and Mrs. May asked him what she should do; he said, "Do what she wants you to do." She testified that Mrs. Cutrer's mind was perfectly clear practically until the time of her death—up to about half past one Saturday night. She further testified that at the time of the giving of the jewelry and of the keys to the house, safe, and garage, Mrs. Cutrer did not contemplate dying, but seemed to be in her usual condition. She said that Mr. and Mrs. Howell, at Mrs. Cutrer's request, had moved into the house and taken charge at the time of the giving of these articles to Mrs.

Howell. Also, that Reggie Ott had a room upstairs in the home.

Mr. E. P. Whittington, attorney for Mrs. Cutrer, testified that the deed of trust executed in 1932, referred to above, was executed by Mrs. Cutrer for the purpose of getting money to satisfy an execution which had been issued on a judgment on the supersedeas appeal bond, which Mrs. Cutrer had signed with one G. T. Thomas, who had appealed a case to the Supreme Court, the bond being for $8,600. That at the time of the issuance of execution Mrs. Cutrer turned over to Miss Rylee, who had represented G. T. Thomas, a $1,000 Liberty bond, to be converted into money and applied on the liquidation of the execution sale. That Mr. Howell finally agreed to put up whatever money was necessary; that Mrs. Cutrer sent for the witness, that some money was gotten up, and the amount to be paid by Mrs. Cutrer was cut down to $4,300 and some odd dollars—whatever the amount paid by Mr. Howell's check—and this was secured by a $4,700 deed of trust; that the deed of trust was drawn for that amount because the witness estimated that much would be required; but another attorney, who had represented a prior judgment, was settled with for 50 cents on the dollar, saving the difference between the $4,300 and odd dollars and the $4,700.

Mr. Whittington also testified to the transaction on January 7, 1933, in which $1,000 was to be paid to him for a fee, which amount he assigned to Mr. Y. E. Howell, to whom he owed money, and was credited with said amount on his debt. He testified that Mrs. Cutrer had possessed considerable money in the course of her life, and had spent a great deal; that because of the general condition of the country her only assets were what is known as negro rental property, in which she had a half interest, Mr. Al Nachman owning the other half—with the exception of some stores on Delta avenue, from which she had no income, as they were not rented at the time.

In this state of her affairs Mrs. Cutrer had no way of paying her taxes, insurance, or living expenses, and the only place she could obtain any money was from Mr. Howell—no bank in the country would lend money at that time. They discussed the matter with Mrs. Cutrer, figured the amount of taxes she would have to pay, the fee she would pay to the witness, and about $100 per month for living expenses.

The witness further testified that a bank at Clarksdale had a deed of trust from G. T. Thomas and his wife, with whom it had some financial transactions; that it wanted to get hold of the collateral held by Mrs. Cutrer, in the shape of a deed of trust, and after a considerable discussion they agreed to take $2,500 for a transfer of that mortgage; the witness explained to Mrs. Cutrer the amount of money that could be realized from the securities, concerning which she was much pleased; that he then told the Coahoma County Bank that she would take that amount. She had Mr. Howell pay him $250, took $250.00 for herself, and turned the $2,000 over to Mr. Howell to keep for her, as she said she had no one to send to the bank, or to attend to other matters for her, and that she could rely on him to attend to her affairs. Mr. Whittington also testified that he transferred a $1,000 note to Mr. Howell, to be applied on a debt which he owed him. He said that he saw Mrs. Cutrer nearly every day, and often heard her discuss the property and dwelling house as belonging to Alluwee Howell, and knew that in the early part of 1934 Mrs. Cutrer insisted that Mr. and Mrs. Howell should move to her house—that she said that "it all belonged to Alluwee and she wanted her to come down there and enjoy it." Mr. and Mrs. Howell went to Mrs. Cutrer's house on Sunday before her death. Before moving, Mrs. Howell spent considerable time with Mrs. Cutrer. Mr. Whittington testified that he saw the actual delivery of the jewelry, etc. He said, "Well, Mrs. Cutrer

had a habit of wearing all the jewelry she had all the time. On this particular date one of the rings she had lost in the bed and Mrs. Mays who was the nurse on charge of the case, she called the nurse's attention to the fact that she had lost the ring in bed and she looked around and found the ring in the bed and she told Mrs. Mays, 'I want you to take these rings and my jewelry and go and give them to Alluwee, they are hers anyway, and I want her to have them.' Mrs. Mays said, 'what shall I do,' and I said 'I would do whatever she wants me to do.' She then held her hands up so she could take them off and these little screw ear-bobs out of her ear and tore a piece off of the dressing they had to dress this wound on her breast, suffering from cancer, and strung the rings on it and at the same time she told her to look in the top drawer of the chiffonier and her keys were in there and take these keys and give them to Alluwee, they are hers. She went and got the keys and took the jewelry, diamonds, etc., and went and gave them to Mrs. Howell; that was on Tuesday."

"Q. You know what the keys were to? A. The keys to the house, automobile and safe; there is a safe on the back porch."

"Q. You know what Mrs. Howell, whether these things were actually delivered to Mrs. Howell or not? A. Yes, sir, they were actually delivered to her and she took time and immediately went to the safe on the back porch and threw it open—threw the combination. At that time I don't suppose it had been thrown on that safe in twenty years. It had inside lock door on inside of combination. . . .

"Q. What did she say? A. She said they belonged to Alluwee, Mrs. Howell, and she wanted her to have them; take them and give them to her."

Mr. Howell testified, as a witness, to the same effect in regard to the jewelry and household effects, and as to what happened at this time. It seems that on an

earlier occasion in this same case he had testified, and there was some discrepancy between his testimony on the two occasions; but he stated that he was confused on the first occasion as to some of the particulars. His testimony on the last examination is in accord with that of both Mrs. May and Mr. Whittington.

At the conclusion of the evidence the chancellor rendered a decree upholding the assignment of the Tolke note and deed of trust to Mrs. Howell, saying that she got whatever title thereto Mrs. Cutrer could convey; which holding was correct. The court further held that the deed of trust executed by Mrs. Cutrer to Y. E. Howell, dated January 7, 1933, for $4,000, bearing interest at 6 per cent. per annum, according to Mr. Howell's records, was credited with $600 as of January 20, 1933, and with $2,000 as of June 8, 1933; and that the interest charged, shown in the above statement, Exhibit D, to be $2,400, was usurious, exceeding 8 per cent., but not exceeding 20 per cent. per annum; and therefore all interest was forfeited, but not the principal.

The transaction involving this interest charge was a mere book entry. It is not shown that Mrs. Cutrer had anything to do with it. Certain funds belonging to Mrs. Cutrer were in the hands of Mr. Howell, and he entered a mere book charge on the accounts kept by him. This was not embraced in his report to the chancery court, and it appears that there was at no time anything more than mere book entries.

We think, from the language of section 1946, Code of 1930, "If a greater rate of interest than eight per centum shall be stipulated for or received in any case, all interest shall be forfeited," etc., that it was contemplated that there should be either a stipulation or agreement to receive more than 8 per cent., or else there must have been a receipt of such interest from the debtor to the creditor. The mere intention or charge, without a stipulation or receipt, does not violate the

statute. Doyle v. L. Herzog & Bros. Dry Goods Co., 115 Miss. 154, 75 So. 760. In the first syllabus of this case it is said: "Under Code 1906, section 2678, as amended by Laws 1912, chapter 229, providing that 'if a greater rate of interest than eight per cent. shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory,' a creditor is not penalized merely for demanding a greater rate of interest than eight per cent. where there was no contract to pay a greater rate and no such excessive interest was actually paid." In order to receive there must be one person to offer and another to take, or the passage of the interest from one person to another. It does not contemplate a mere book entry, unless such book entry is accepted and agreed upon.

In Perry v. Martin, 73 N. J. L. 310, 62 A. 1001, it was held that the same person cannot be both thief and receiver in a criminal action, in order to constitute the crime of receiving stolen goods. Knowing the articles to be stolen, there must be a thief and a receiver; the statute never contemplated that the thief should be guilty of receiving stolen goods from himself. See, also, Wharton's Crim. L. 986; Adams v. State, 60 Fla. 1, 53 So. 451, Ann. Cas. 1912B, 1209.

The proof does not show that the interest charge was called to the attention of Mrs. Cutrer, and acquiesced in by her. Mr. Howell had funds in his hands belonging to her, and charged on his books an improper amount of interest. If his idea, that entering a credit was the equivalent of actual money set apart, had been correct (which it is not), interest would have accrued on the full amount so set aside. Had funds actually been set aside in cash for Mrs. Cutrer, to be used at her will or demand, available at all times, then the 6 per cent. interest would have been chargeable, and would not have been usurious. It appears, therefore, that the

charge was excessive, but that no actual money was received from the debtor by the creditor. Consequently the chancellor should have allowed 6 per cent. on whatever balance there was through the stated period of time.

The third item in the chancellor's decree was that the executor should have taken possession of the personal property, the notes, jewelry, etc., and administered it as an asset of the estate. We think, on the proof in this record, that there was a valid gift of personal property, and that Mrs. Howell was entitled to all the property in the house, the safe, and the garage. In First National Bank v. Peugh, 129 Miss. 817, 93 So. 355, it was stated in the syllabus: "Under an agreement to transfer the title and possession of personal property for a valuable consideration, a symbolical delivery of the property by delivery of the key to the building in which the property is stored, and also the transfer of the lease of such building and the surrender of the right of possession thereof, is a sufficient delivery of the property to complete the sale and transfer of the title thereof."

It will be noted from the statement that the deed conveyed the property, both real and personal, in the building conveyed, which was the home of Mrs. Cutrer. It was clearly Mrs. Cutrer's intention, by both deed and oral testimony, that Mrs. Howell should have this property.

In Carradine v. Carradine's Estate, 58 Miss. 286, 38 Am. Rep. 324, it was held that where the owner of buried money states that at his death he wanted his brother to have it, but which money was subsequently dug up by his brother under his supervision before he died, and kept in the owner's house until his death, when the brother took possession of the same, the gift was completed.

In Newell v. Newell, 34 Miss. 385, it was said in the

eighth syllabus: "As a general rule, a gift of a chattel is never complete without a delivery of possession; but, where the donor acknowledges, under his hand and seal, that a delivery was in fact made, he will be estopped to deny the delivery thus admitted, especially when the deed has been regularly recorded." In the case at bar the deed was delivered and recorded, and of course the heirs and devisees, and others voluntarily taking, would be estopped the same as the grantor in the deed.

In the case of Coppage v. Barnett, Adm'r, 34 Miss. 621, the court said in the second syllabus: "It is not essential to the validity of a gift of personalty by a recorded deed, that there should be an actual delivery of the property; it is sufficient if there be a constructive delivery, with a continued and open acknowledgment of the donee's right by the donor; and hence, where a father made such a gift of several slaves to his minor child, then residing with another, and delivered a portion of the slaves under the deed, which returned to his possession with the child, and thereafter all of the slaves remained with the father and child, and the father and all of the family, from the date of the deed, always spoke of and recognized the child's title as valid, it was held that the gift was good and effectual in law, and vested a good title to all the slaves in the donee."

The writing referred to in Gidden v. Gidden, 176 Miss. 98, at page 108, 167 So. 785, was not acknowledged and recorded, and did not give the property in praesenti. The cases cited in that opinion at page 109 of 176 Miss., at page 790 of 167 So., are not cases where a delivery, acknowledged before an officer, and recorded, was involved. The case of McWillie v. Van Vacter, 35 Miss. 428, 72 Am. Dec. 127, was decided by only two judges, who did not agree on the law, Judge Fisher had resigned from the court, and his successor had not qualified. Judge Handy, in his opinion, expressly put his affirmance on the ground that the certificate of the

justice did not recite that the grantor had acknowledged that he signed and delivered the instrument there under review. See 35 Miss. 428, at page 456. See, also, 28 C. J. 648; 28 C. J. 637, sec. 26; and Mechem on Sales, p. 1043; 24 R. C. L. 57, sec. 321.

It is further contended by the appellee that it was the duty of Howell, executor, to pay off the debt upon the lands willed to Ott, from the personal property in his possession as such executor; and that it was his duty to probate his claim; and that, inasmuch as he failed to do so, the court should direct him now to apply the personal property of the estate to the payment of the debt, so as to discharge the lien upon the property devised to Ott in the will, which was incumbered subsequent to the writing of the will.

This contention called for an examination of all the terms of the will in order to determine the intention of the testator. It is the duty of the court to give effect to the will of Mrs. Cutrer, and to carry out her intention, if ascertainable from the will, which in such case controls unless in violation of specific provisions of the law. The direction of the will as to payment of the debts is: "I desire all my just debts to be paid, provided they are probated and allowed within the time and in the manner required by law." This seems to express the intention of the testator to be that she only desired her personal property to be applied to such debts as were probated and allowed by the court within the time and in the manner required by the statute; and that no debt not so probated should be a charge upon the personal property. The usual provision in wills is that the just debts shall be paid. We must presume that the testator used language for a purpose, and that the language used in the proviso above quoted was intended to make the personal property responsible only for the probated debts.

In item 2 of the will she bequeathed to Mrs. Virgie

Smith (Mrs. George Raymond Smith), "if she is living at the time of my death, the sum of Five Hundred Dollars." In item 3 she devised to the appellee, Reginald D. Ott, "I hereby, give, devise and bequeath to my nephew Reginald D. Ott, to belong to him in his own right, all of my right, title and interest in and to the following described property [describing the lands to be devised to him]." In item 4 she devised to her sister-in-law, Mrs. Alice Cutrer Mixon, using the following language, "I hereby give, devise and bequeath to my sister-in-law, Alice Cutrer Mixon, of Osyka, Mississippi, the following described property, situate in the City of Clarksdale, Mississippi, to-wit [describing the property], according to the Polk map of said City of record in said county."

It will be noted from a comparison of the items, that in item 3 the words, "all of my right, title and interest," are used; but not in item 4. In item 5 there was a devise to the servant, "in consideraion of his long and faithful service to me," again using the language, "all my right, title and interest in and to" the property devised, and describing the property. And in item 6, in devising specific property to Mrs. Alluwee Ott Howell, she again uses the phrase, "all of my right, title and interest in and to said" certain specifically described property.

She selected and nominated Y. E. Howell as her executor, to act without the necessity of giving bond, or reporting to any court or tribunal in the premises.

The phrase, "All my right, title and interest in and to the following described property," has a particular legal significance; and the court must assume that the testator used it intelligently, and with knowledge of the meaning of the words. In 7 Words and Phrases, First Series, p. 6235, under the phrase, "Right, title, and interest": " 'Right, title and interest,' as used in a deed conveying the right, title, and interest of the

grantor, means only what the grantor himself could claim, and the covenants in such deed, if any, are limited to the estate described." Again, "A deed of all the grantor's 'right, title, and interest' in and to a ferry 'and the boat which I built, and now use in carrying on the ferry, and all the estate, land, and buildings standing thereon, as the same is now occupied and improved by me,' with covenants of ownership, general warranty, etc., purported to convey merely such right as the grantor had in the land, and the covenants were qualified and limited by the grant." Again, it is said: "A grant of the 'right, title, and interest' of a party in certain lands, with the usual covenants of seisin and warranty, is limited as to such warranty to the estate and interest conveyed, and is restricted to such title and interest, and is not a general warranty of the whole parcel particularly described by metes and bounds." And again: "A deed of 'all my right, title, and interest' in certain real estate purports to convey merely such right as the grantor has in the land; and, as the grantor conveys his own title only, the general covenants of 'seisin in fee of the aforegranted premises that they are free from all incumbrances, that the grantor has a good right to sell and convey the same and that he will warrant the same against the lawful claims of all persons,' are all qualified and limited by the granting clause of 'all my right, title, and interest' in the premises." And again: " 'Right, title, and interest,' as used in a deed conveying the grantor's right, title, and interest, are words of release and quitclaim merely."

Other definitions of similar import are contained in 7 Words and Phrases, First Series, on the meaning of the above-quoted words.

In 4 Words and Phrases, Second Series, p. 395, the phrase, "right, title and interest," is defined to the same effect; and among the decisions cited under this phrase is the case of Moss Point Lumber Co. v. Board of Sup'rs

of Harrison County, 89 Miss. 448, 42 So. 290, 300, 873. In syllabus 6 of the Mississippi Report of this case, it is said: ''The phrase, 'the right, title, use, interest, and occupation,' as used in the statutes providing that lessees of school lands shall be vested with 'the right, title, use, interest, and occupation of' the lands, must be construed as used in connection with the character of the estate which is authorized to be conveyed, which is a leasehold estate, and it conveys only such right, title, use, interest, and occupation as go with a leasehold.''

The testator having used these words, it is manifest that she intended the devise to Ott and to others, where these words were used, to be of such estate as she had in the lands at her death, and it was her intention, we think, that the devisee should take the same cum onere. Having given a deed of trust on these lands after executing the will, and having selected her executor and clothed him with full discretion, she must have known of his right, as a creditor, to stand upon the security which she gave him in the deed of trust, and not to probate his claim, to become a charge on the personal assets of the estate. Under section 1679, Code of 1930, it is provided: ''A creditor of a decedent who has a lien of any kind on property of the decedent shall not be barred of his right to enforce the lien against the property by a failure to present his claim and have it probated and registered, but shall be barred of all claim to be satisfied out of the assets not affected by such lien; and a person claiming to have a lien on any property of the decedent may be made a party to any proper proceeding by the executor or administrator or a creditor to test the validity of such claim to a lien, and to determine upon the right of such claim; and this may be in a proceeding to sell property, which may be ordered to be sold free from such lien, or subject to it; and the decree may be made as to a sale and disposition of the

proceeds of the sale of the property, as may be according to the rights of parties before the court."

We see no reason why the executor should not have the same right as any other creditor to stand upon the security, and not probate his claim. Had he renounced the executorship conferred upon him by the will, and another been appointed in his place, he would have had the same right to stand upon his security and not probate his claim, with the same result following his acting in such manner while executor. Mrs. Cutrer evidently knew of such a right, and yet made no provision in the will requiring the probation of his claim, or the application of her personal property to the satisfaction of such debts against the lands, to the hurt or destruction of bequests made to others in the will.

By section 1677 of the Code the claims of administrators and executors are put upon the same footing as the claims and demands of others. In other words, it appears to have been the legislative purpose to do this. The section reads as follows: "An executor or administrator shall not be allowed to retain any part of the assets in payment of his own claim against the deceased, unless the same be probated and registered as other claims, and passed by the court; and every such claim shall stand upon an equal footing with other claims of the same nature."

By section 1672 all claims against the estate of a deceased person, unless registered and probated and allowed within the period prescribed by law, are barred, and suit shall not be maintained thereon in any court, even though the existence of the claim may be known to the executor or administrator. In repeated decisions of this court it has been held that claims not probated when notice to creditors has been published cannot be paid, and the executor or administrator is not protected in paying those which have not been probated and allowed in the manner prescribed by law. This

is specifically provided in section 1674, the concluding clause of which states, "he shall not pay any claim against the deceased, unless the same has been probated, allowed, and registered."

It is insisted by the appellee that he had a right to have the land exonerated, regardless of whether the claim was probated or not, as an equity; and that his right thereto has not been foreclosed by the failure of the executor to probate the debt secured by a mortgage upon this property. He relies upon Smith v. Kibbe, 104 Kan. 159, 178 P. 427, 5 A. L. R. 483, and case notes beginning at page 488 and on later cases, and case notes appearing in 29 A. L. R. 1242. In the wills involved in the cases referred to in 5 A. L. R. and 29 A. L. R., it was directed that the debts were to be paid, using the words generally, without qualification or condition. It would seem a rather strange application to hold that a debt which had not been probated, and payment of which was prohibited by law, because not probated and allowed as required by law, could, notwithstanding the failure to probate, be directed to be paid out of the general assets and bequests of personal property or specific legacies. To so hold would defeat the purpose of the statute in prohibiting payment unless probated. The rule in reference to abatement of legacies, exhausting residuary legacies, etc., to exonerate debts or incumbrances on real estate, discussed in Gordon v. James, 86 Miss. 719, 39 So. 18, 1 L. R. A., N. S., 461, may be controlled by the terms of the will. Benton v. Friar, 171 Miss. 361, 157 So. 356.

It might be that the devisee, within the period for the probation of claims, could institute some proceeding to compel probation of the claim—as to which we decide nothing. But it seems clear that when the period has expired, and the claim has not been probated, the property incumbered to secure the unprobated debt must be held, subject to the lien, by a devisee or the

heir at law. But, as we have already pointed out, it is not the intention of the testator to have the incumbrances upon these lands discharged at the expense of personal property, and the elimination of bequests made in the will to others.

It is also contended that the court allowed excessive fees to the executor for his services, and for the services of the attorney employed by him. It is probable that the court below was influenced in this matter by the theory that the personal property belonged to the estate, and constituted part of the assets to be administered, whereas we have held that it was given to Mrs. Howell by Mrs. Cutrer prior to her death. As a rule, the judgment of the lower court as to the amount of fees to be allowed in such cases, where provided for by law, and as to which the court has discretion, is entitled to great respect. The fees vary in different sections, and the trial judge is in position to have a better understanding of what is reasonable in a particular community than is possible for an appellate court, unacquainted with conditions in the locality. For this reason the judgment will be reversed, in order that the court may determine the amount in the light of the holding of this court in the case.

For the reasons indicated, the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

Entries in books of account are evidence of facts which have actually transpired. Such entries do not first make facts of things which have never actually happened, and thereupon act as evidence thereof. They do not make facts—they evidence facts. They do not convert mental conceptions or legal theories into tangi-

ble facts, as if such facts had actually happened. The balance of the amount actually due Howell as an individual is to be ascertained under that rule and under Section 539, Code 1930; and, except as expressly dealt with in the original opinion, all issues involved either on the direct or on the cross-appeal are left open for full investigation and determination by the chancery court at subsequent hearings after remand. With this understanding, the suggestion of error is overruled.

So ordered.